[S. F. No. 731. Department Two.—September 25, 1897.]

JOHN A. TOWNLEY, Appellant, v. EDSON F. ADAMS, Respondent.

NEW TRIAL—CONSTRUCTION OF CODE—LIMITATION OF POWER OF COURT TO SET ASIDE VERDICT OF ITS OWN MOTION—REVIEW UPON APPEAL.—The superior court has no power to set aside a verdict and to order a new trial of its own motion, without an application of either party, other than that expressly conferred by section 662 of the Code of Civil Procedure, in cases where there has been such a plain disregard by the jury of the evidence as to satisfy the court that the verdict was rendered under a misapprehension, or under the influence of passion or prejudice, or where there has been such a plain disregard of the instructions as to satisfy the court that the verdict was so rendered; and though such an order will be sustained, if the case is clearly within that section, notwithstanding an unauthorized reason is assigned therefor, yet, where the record discloses a case not specified in that section, an order of the court setting aside the verdict of its own motion must be reversed upon appeal.

APPEAL from an order of the Superior Court of Alameda County setting aside a verdict of its own motion. A. L. Frick, Judge.

The facts are stated in the opinion of the court.

Dunne & McPike, for Appellant.

William & George Leviston, and H. S. Brown, for Respondent.

HENSHAW, J.—The firm of Darby, Laydon & Co. entered into a written contract with the defendant Adams for the construction of a bulkhead upon his property in Oakland harbor. This action (brought by the firm's assignee) was to recover the sum of $2,534.73, alleged to be due for extra labor and mate-

rials furnished in connection with the work. The controversy was given to a jury for determination, and the jury returned its verdict for plaintiff in the amount sued for. Thereupon the court, without motion or application of either party, but upon its own motion, set aside the verdict in the following order: "The court of its own motion orders that the said verdict as rendered be, and the same is hereby; set aside and a new trial ordered, upon the ground, and no other, that the evidence as given does not justify the verdict as rendered, and that said verdict is against the law and the evidence." From this order plaintiff appeals. His contention is, that under the facts presented by the record the order was in excess of the jurisdiction of the court.

Section 657 of the Code of Civil Procedure provides that "the former verdict or other decision may be vacated and a new trial granted, *on the application of the party aggrieved,* for any of the following causes materially affecting the substantial rights of such party. . . . . 6. Insufficiency of the evidence to justify the verdict or other decision, or that it is against law."

Section 662 declares that "the verdict of a jury may also be vacated and a new trial granted by the court in which the action is pending, *on its own motion,* without the application of either of the parties, when there has been such a plain disregard by the jury of the instructions of the court or the evidence in the case as to satisfy the court that the verdict was rendered under a misapprehension of such instructions, or under the influence of passion or prejudice."

If the section last quoted is to be construed as a limitation upon the power of the court to grant a new trial, then, before the exercise of that power can be upheld, it must be made to appear either: 1. That there has been such a plain disregard by the jury of the evidence as to satisfy the court that the verdict was rendered under a misapprehension or under the influence of passion or prejudice; or 2. That there has been such a plain disregard of the instructions as to satisfy the court that the verdict was so rendered. That the provisions of the code do define the powers of the court in granting a new trial, and limit the exercise of those powers, we entertain no doubt. Section 4 of the Code of Civil Procedure provides as follows: "The rule of the common law that statutes in derogation thereof are to be

strictly construed has no application to this code. The code establishes the law of this state respecting the subjects to which it relates, and its provisions and all proceedings under it are to be liberally construed, with a view to effect its objects and to promote justice." In *Dorsey v. Barry*, 24 Cal. 449, discussing the power of the inferior court to grant a new trial, it is said: "It does not necessarily follow that if the appellate court can order a new trial in the inferior court that the inferior court can of its own motion grant a new trial. It will be remembered that in the early history of the common-law courts of England the court of chancery directed a new trial at law in those courts, and it enforced its decree under the penalty of a perpetual injunction if the adverse party should refuse. (1 Graham and Waterman on New Trials, 4.) The power to grant new trials and the mode of its exercise are dependent mainly, if not entirely, upon the statute in both civil and criminal actions. The grounds upon which it may be obtained and the manner of applying for and procuring it are therein prescribed."

In *Humiston v. Smith*, 21 Cal. 129, it was laid down that the system of remedies provided by the practice act is exclusive, and when it provides an adequate remedy no other can be pursued.

In *Kelly v. Larkin*, 47 Cal. 58, it is held that the motion for a new trial under the practice act is a remedy and not a right. The rules and principles here announced are not changed by transforming the earlier practice act into the present Code of Civil Procedure. A like interpretation has been given by the supreme court of Missouri to its code sections. In *State v. Adams*, 84 Mo. 310, it is said: "For the causes named in section 3705 the court of its own motion may set aside the verdict. Its common-law power in that respect is not prejudiced by the statute. On other grounds than those specified in that section the court cannot of its own motion set aside the verdict." And for extended consideration of the subject, see Hayne on New Trial and Appeal, sections 7-10. In concluding his discussion upon the subject the learned author says: "It is submitted that the statute gives the power in those cases only in which the error of the jury is so gross as to be at once apparent."

The reason given by the court for granting the new trial, it may be noticed, is not amongst those for which such an order

may be made of the court's own motion; but it is amongst those for which the court may grant a new trial upon application of the aggrieved party, and after the exercise of the very valuable right secured in such cases to the party resisting the motion to convince the court, if possible, by argument that the reason is not well founded.   Where, however, the court grants the new trial of its own motion, the party against whose interests the order is made is deprived of this substantial right, and therefore it is that the lawmakers have restricted the court to cases of plain and gross abuse by the jury.

But, while the reasons thus given by the court are not such as will sustain the order, it will not be reversed if, upon careful inspection of the record, it may be seen that the order may be supported upon valid grounds.   It thus becomes necessary to consider: 1. Whether there was a plain and palpable disregard by the jury of the evidence; and 2. Whether there was a plain and palpable disregard by the jury of the instructions.

In general, the work which the contractors were to perform was to drive the piles and construct the woodwork of the bulkhead.   The piles were to be furnished by the defendant.   The work was to be done under the supervision of his engineer.   The work was to be completed upon a given date, and for each day's delay in completion thereafter the contractors were to forfeit $25 liquidated damages.   The owner was privileged to modify, change, add to, or subtract from the work to be done, and extra work was to be performed only under written order of the engineer.   Materials which the contractors furnished were to be paid for at stipulated rates.   Of the items which go to make up the amount sued for, some were undisputed.   It was admitted by defendant that but $4,700 had been paid upon the contract price of $4,936.49.   Of the disputed items for extra labor and material, one was the supply by the contractors of some 1,300 pounds of iron at seven cents a pound; another was $400 for extra work of excavating; and the third was the sum of $1,194 for driving 398 sheet piles at three dollars each.   Upon each of these items plaintiff offered evidence in support of his demand.   Upon the first item of iron there is no apparent conflict in the evidence. Upon the last item of extra work in excavation plaintiff offered evidence to prove the number of laborers employed and the

amount of time by them consumed in the performance of the
work, from which it would appear that the actual cost to the con-
tractors was $367.69, leaving to them a profit upon this item of
$32.31.   A substantial difference between the parties upon this
item was whether or not this work, or all of it, was extra work.
Upon this there was a conflict in the evidence.   Upon the larger
item of $1,194 for driving 398 sheet piles, charged for at the rate
of three dollars a pile, the facts are as follows: The contract pro-
vided that these piles "shall be driven hard to a depth satisfactory
to the engineer in charge."   The contract further provided that
the owner and engineer should be represented at the work by an
inspector.   The evidence upon the part of the plaintiff is, that
each one of these piles was selected by the inspector, all being fur-
nished by the defendant under the contract; that each one of
them was driven under the immediate supervision and direction
of the inspector, and that the driving of each one of them was
stopped only when the inspector declared that it had been driven
far enough.   After the piles had thus been driven, and the work
approved and payments thereon made during its progress, as
provided for by the contract, the engineer in charge reached
the conclusion that the piles had not been driven far enough,
and orders were given for the redriving of them.   This neces-
sitated much additional labor and expense upon the part of the
contractors, and greatly delayed the completion of the work.   It
became necessary to drive the piles with an overhanging machine,
and by the use of a "follower," whereby the driving force was
but indirectly applied to the head of the pile.   The testimony
of plaintiff's witnesses is to the effect that the necessary outlay
in thus redriving these piles six feet further was three dollars
a pile.   The conflicting evidence is that of the engineer, to the
effect that the value of thus redriving or "following" the piles
was by no means so much as was contended for.

Upon the part of the defendant, and as a defense, it was urged
that the work was not done in a workmanlike manner, and to
support this it was shown that after the completion of the work
a section of the bulkhead had sprung and "gone out."   In con-
tradiction of this, however, plaintiff offered evidence to prove
that the work was done under the immediate direction, super-
vision, and orders of the engineer, and of the inspector repre-

senting him, who was constantly and continuously there; that the materials used were furnished, as the contract provided, by defendant; that the piles were driven to the depth required; that no objection at any time was made by the engineer in charge, or by the inspector, to the character of the work done; that the contractors received the final certificate from the engineer to the effect that the work had been fully completed in a good and workmanlike manner, and that the break in the bulkhead was occasioned by an inherent defect in the work itself, in that the structure was not sufficiently strong to resist the pressure of the filling placed behind it after dredging the earth away from the front of the piles to a depth of twenty-two feet.

Upon the proposition, admittedly true, that the extra work was not ordered in writing by the engineer, evidence was offered to show that compliance with this provision was waived by executed parol agreement of the parties. Upon the question of the delay in the completion of the work beyond the contract time, and the counterclaim of liquidated damages therefor at the rate of $25 per day, while it was admitted that the work was not completed in time, evidence upon the part of the plaintiff was offered to show that the delay was occasioned by the extra work which they were ordered to perform, made necessary by inherent weaknesses and defects in the original plans.

And, finally, it may be observed that at the completion of plaintiff's case the court denied defendant's motion for a nonsuit, thus evincing its belief that the plaintiff had offered substantial evidence in support of his pleading.

So it appears upon the first proposition that there was evidence adduced upon behalf of the plaintiff upon all of the issues in the case, both those presented by the complaint, as well as those tendered by the answer.

Upon the second proposition, that of the palpable or gross disregard by the jury of the instructions of the court, it is to be noted that every one of the issues of fact which we have been reviewing was submitted by the court to the determination of the jury under instructions pertinent for their consideration. Upon no proposition was the case withdrawn from the jury, nor upon any matter did the court direct a verdict. It was, therefore, by the court left open to the jury to reach a conclusion

upon all of these disputed facts, and, doing so, they found in favor of the plaintiff. We are unable to perceive here any such plain abuse of the instructions as is contemplated by section 662.

Properly to emphasize the distinction which exists between the right of a court to grant a new trial upon application of a party, and the right to grant it upon its own motion, it should be said that the foregoing considerations have nothing to do with what may be conceived to be the weight of evidence. Thus, it might well have been that had the court, upon application of defendant and after exercise by plaintiff of his right of argument, granted the new trial, this court, under its well-settled rules, would not have considered the question of preponderating evidence, and would not have disturbed the order of the trial court made after such hearing; but where, as here, the court of its own motion sets aside the verdict of the jury, then, as has been said, it must be made to appear that the jury plainly, palpably, grossly, disregarded either the evidence or the instructions of the court. In this case it is quite apparent that such gross disregard has not been shown to exist.

The order is therefore reversed and the cause remanded.

McFarland, J., and Temple, J., concurred.

Hearing in Bank denied.