[Sac. No. 1333. In Bank.—May 9, 1907.]

# JAMES CHUBBUCK, Appellant, v. S. H. WILSON, Respondent.

PUBLIC OFFICE—RIGHT OF DE JURE OFFICER TO SALARY—DAMAGES FOR INTRUSION.—At common law, the salary annexed to a public office is incident to the title to the office, and not to its occupation and exercise, and in the absence of statutory provision the *de jure* officer recovering possession of the office has a right of action against the intruder for the damage occasioned him by the intrusion, and the salary and fees received by the intruder are the measure of his damage. Section 936 of the Political Code, from the time of its adoption to the year 1891, recognized this doctrine.

ID.—LEGISLATURE MAY DETERMINE RIGHT TO COMPENSATION.—The matter of compensation of public officers is wholly within the domain of the legislature, to be arranged as may be deemed best for the public interest, and every successful candidate for public office takes his office subject to such provision. The legislature has power to provide that the compensation annexed to an office, pending contest, shall be given to the incumbent holding the certificate of election and discharging the duties of the office.

ID.—EFFECT OF AMENDMENT OF 1891 TO SECTION 936 OF POLITICAL CODE—INCUMBENT ENTITLED TO SALARY.—Since the amendment of 1891 to section 936 of the Political Code, an incumbent of a public office, who holds the certificate of election or commission of office and discharges the duties of the office, is entitled, pending a contest as to the title to the office, to the compensation incident to the office as pay for his services, whether the same be salary in the strict sense or designated fees for specified services, and the contestant, after a final determination of the contest in his favor, has no claim against such incumbent, either as salary or for damages on account of the compensation so received by him.

ID.—INCUMBENT NOT LIABLE FOR DAMAGES TO SUCCESSFUL CONTESTANT.—Section 807 of the Code of Civil Procedure, relating to the action that may be brought by the attorney-general in the name of the people of the state against one usurping or unlawfully holding or exercising a public office, and which has always provided that if judgment be rendered upon the right of another person alleged to be entitled, in favor of such person, he may recover, by action, the damages which he may have sustained by reason of the usurpation of the office by the defendant, does not, since the amendment of 1891 to section 936 of the Political Code, authorize the successful contestant to recover, as damages, from the incumbent who held the certificate of election and discharged the duties of the office pending the contest, the amount of the salary or compensation received by him pending the contest.

ID.—APPEAL FROM JUDGMENT IN FAVOR OF CONTESTANT.—An appeal
taken by the incumbent in the contest proceedings, from a judg-
ment in favor of the contestant, declaring him elected and annulling
the certificate of election held by the incumbent, if taken within
ten days after judgment, operates as an absolute suspension of the
judgment, and continues the certificate of election in full force
during its pendency, and entitles the incumbent to hold the office,
discharge its duties, and receive the compensation until the affirm-
ance of the judgment on appeal.

APPEAL from a judgment of the Superior Court of Butte
County. John C. Gray, Judge.

The facts are stated in the opinion of the court.

A. E. Boynton, and Park Henshaw, for Appellant.

W. H. Carlin, for Respondent.

ANGELLOTTI, J.—This is an appeal by plaintiff from a
judgment given in favor of defendant on sustaining a de-
murrer to the complaint. The facts of the case, as shown by
the complaint, are as follows: Plaintiff and defendant were
opposing candidates for the office of sheriff of Butte County
at the general election held November 4, 1902. On the official
canvass of the returns of said election, defendant was found
to have received the highest number of votes and was declared
elected, and a certificate of such election was regularly issued
to him on November 22, 1902. In January, 1903, he entered
upon the discharge of the duties of the office. Plaintiff in due
time contested the election of defendant under the provisions
of the Code of Civil Procedure relative to such contests (sec.
1111 et seq.), with the result that, on January 24, 1903, judg-
ment was rendered in the superior court of Butte County
declaring plaintiff elected to the office and annuling the certifi-
cate of election issued to defendant. Thereupon, plaintiff qual-
ified, and, on January 26, 1903, demanded to be let into pos-
session of the office. Defendant on the same day appealed
from said judgment to this court. The judgment was affirmed
by this court on March 25, 1904, the *remittitur* being trans-
mitted to the superior court one month thereafter. There-
upon, on April 25, 1904, defendant, who had in the mean

time continued in the possession of the office, discharging all
the duties appertaining thereto, surrendered possession of
the office to plaintiff. Between the date of the judgment in
the superior court, January 24, 1903, and the giving up of
possession of the office, defendant received from the county
the accruing salary provided by law for such office, six thou-
sand dollars per annum, as well as certain fees allowed such
officer by law, amounting to six hundred dollars or thereabouts.
This action was brought by plaintiff to recover from defend-
ant the amount of salary and fees so received by him during
his incumbency of the office.

It cannot be doubted that in the absence of statutory pro-
vision compelling a contrary conclusion, these facts would
show a right of recovery in plaintiff. This is not disputed
by defendant. At common law, the salary annexed to a public
office is incident to the title to the office, and not to its occupa-
tion and exercise, and it is apparently well established that,
in the absence of statutory provision, the *de jure* officer
recovering possession of the office has a right of action against
the intruder for the damage occasioned him by the intrusion,
and that the salary and fees received by the intruder are
the measure of his damage. We are of the opinion that this
rule has, however, been materially modified in this state by
statute. From the time of the adoption of the codes to the
year 1891, section 936 of the Political Code was as follows:
"When the title of the incumbent of any office in this state
is contested by proceedings instituted in any court for that
purpose, no warrant can thereafter be drawn or paid for
any part of the salary until such proceedings have been
finally determined." The effect of this provision was to
relieve the disbursing officers of the necessity of determining
at their own risk as to who was the rightful claimant, and,
by keeping the money in the public treasury pending the
proceeding, to secure to the person lawfully entitled to the
office the full salary annexed thereto, and to protect the public
from the contingency of being compelled to pay twice for
the same period of time, as had occurred in *Dorsey* v. *Smyth,*
28 Cal. 21, and *Carroll* v. *Siebenthaler,* 37 Cal. 193. It was
undoubtedly a recognition of the doctrine that the salary
annexed to the office is incident to the true title, and not to
its occupation and exercise, and the rightful claimant, when

his right was finally adjudged, would become entitled to
receive from the disbursing officers the amounts so withheld
and accumulated during the pendency of the proceedings,
whether he had or had not discharged the duties of the office.
(See *People* v. *Potter*, 63 Cal. 127; *Bledsoe* v. *Colgan*, 138 Cal.
34, 36, 37, [70 Pac. 924].) In 1891 this section was amended
by the addition of the following: "provided, however, that
this section shall not be construed to apply to any party to a
contest or proceeding now pending or hereafter instituted
who holds the certificate of election or commission of office,
and discharges the duties of the office; but such party shall
receive the salary of such office, the same as if no such contest
or proceeding was pending." The question in this case is
as to the effect of this provision, pending contest of title to
an office, in the case of one holding the certificate of election
or commission of office, and discharging the duties of the
office. It seems very clear to us that it entitles such a person
not only to receive, but also to retain to his own use, the
compensation incident to the office, and to this extent modifies
the old rule.

It is well settled that, under this provision, the person
so situated may enforce payment of the accruing salary
at the hands of the disbursing officers. (See *Bledsoe* v.
*Colgan*, 138 Cal. 34, [70 Pac. 924]; *Wilson* v. *Fisher*, 140
Cal. 188, [73 Pac. 850]; *Anderson* v. *Browning*, 140 Cal.
222, [73 Pac. 986].) In *Wilson* v. *Fisher*, 140 Cal. 188, [73
Pac. 850], which was *mandamus* against a county auditor, it
was said that the provision of this section that such a person
"shall receive the salary of such office the same as if no such
contest or proceeding was pending" is entirely clear and leaves
no room for the play of construction, that no valid reason
appeared for holding it unconstitutional, and that under it
the petitioner was beyond doubt entitled to his salary, not-
withstanding the pending contest. In *Anderson* v. *Browning*,
140 Cal. 222, [73 Pac. 986], the auditor was forced to draw his
salary warrant in favor of the incumbent holding the certifi-
cate of election, for salary accruing during the pendency of
an appeal by him from a judgment awarding the office to the
contestant, the effect of the appeal taken within ten days
from such judgment being to suspend the operation thereof,
and continue the certificate of election in force unimpaired.

(Code Civ. Proc., sec. 1127; *Day* v. *Gunning*, 125 Cal. 527, [58 Pac. 172].) To this extent certainly, under the decisions cited, the common law has been modified by the statutory provision, for under the old rule the lawful title to the office was in issue in any proceeding to enforce the payment of the salary and only one showing himself to be the officer *de jure* could prevail. (See *People* v. *Potter,* 63 Cal. 127; *Dolan* v. *Mayor etc.,* 68 N. Y. 274, [23 Am. Rep. 168].) It is further established by decisions of our district courts of appeal that, in view of this proviso, the successful claimant cannot enforce the payment of salary already once paid to an incumbent coming within its terms. (See *Merkley* v. *Williams,* 3 Cal. App. 268, [84 Pac. 1015]; *Tout* v. *Blair,* 3 Cal. App. 180, [84 Pac. 671].) As to the correctness of these decisions we have no doubt.

Plaintiff is compelled by the decisions to admit this much, but claims that the provision deals solely and entirely with the respective rights of the incumbent and the *de jure* officer as against the disbursing officer or sovereignty paying the salary, and was not intended to affect the right of the contestant to recover from the incumbent such damages as he may suffer by being excluded from the office, in the event that he is ultimately determined to have been entitled thereto. So far, certainly, as he includes in such damage the amount of any salary or fees received by the incumbent by virtue of this statutory provision, and, therefore, withheld from him, we can see no merit in his contention.

There can, of course, be no doubt as to the power of the legislature to so change the general rule as to the right to the compensation annexed to the office, as to give such compensation pending contest to the incumbent holding the certificate of election or commission of office, and discharging the duties of the office. The matter of compensation of public officers is wholly within the domain of legislative power, to be arranged as may be deemed best for the public-interest, and every successful candidate for public office takes his office subject to the provision. Public offices are created primarily for the benefit of the public, and if it be considered essential to the proper performance of the duties of such an office during a protracted period of litigation as to the right to the office, that the incumbent possessing the *prima facie*

right evidenced by the certificate or commission, and dis-
charging those duties, shall have the compensation, the legis-
lature may undoubtedly so provide. If it is so provided here,
plaintiff was never entitled under the law to any of the com-
pensation accruing prior to the final determination of the
contest in his favor. Under the law, it, to such extent, was
made an incident of the occupancy and exercise of the office,
and belonged absolutely to the incumbent, and in receiving
it, defendant received only what the law gave to him as
the incumbent performing the public service, and holding
the *prima facie* evidence of title to the office, and plaintiff
can have no valid claim against him for damages on account
thereof. The question is as to whether the amendment of
1891 is to be construed as constituting such provision. In
our judgment no other reasonable construction can be given
to it. The only conceivable object for its enactment was to
insure the proper performance of the duties of the office.
As we have seen, under the law as it stood prior to the amend-
ment, no salary could be paid to either party pending the
contest. This manifestly relieved the disbursing officers from
all embarrassment as to whom the salary should be paid, fully
protected the public against the possibility of double payment
for the same service, and preserved the whole salary, incident
to the office, intact in the public treasury, for the one who
should ultimately be determined entitled to the office. It was
found, however, as might well have been foreseen, that the
public service incident to the office might not be performed
well, if at all, by one who was receiving no compensation for
his services, and whose right to ever receive the same was con-
tingent upon a final adjudication in his favor in the contest
as to the right to the office, a result as to which there must
always be some degree of doubt, and in many cases a very
serious doubt. Under such circumstances, it might well be
that neither claimant could afford to take the risk of perform-
ing the duties without compensation, and the public service
might be very greatly embarrassed. To remedy this was,
unquestionably, the object of the amendment. It will readily
be seen, however, that very little, if anything, has been
accomplished in the desired direction, if the effect of the
amendment is practically to make the person receiving the
salary merely the trustee for the rightful claimant until the

contest is concluded, for such would be the effect of a construction that would leave the incumbent liable to such rightful claimant for the damage caused by his failure to obtain the salary. Unless he be absolutely execution-proof and devoid of any desire to pay his debts, the incumbent would still be beset with the same difficulties as under the old law. To merely receive and temporarily retain and perhaps use the salary, with a knowledge that the amount must ultimately be given in the form of damages to the other claimant, if he finally prevail, would not materially assist the situation as it existed prior to the amendment. No good reason can be given for the amendment if it goes only to this extent. So construed, its only practical effect would be to take away the absolute security theretofore afforded the rightful claimant by retaining the salary in the treasury for him, and make his ability to recover the same depend on the solvency of the party who had received it, which would manifestly be a most absurd result. The plain language of the amendment and the manifest object of its enactment point inevitably to the conclusion that it was the intention of the legislature that, pending contest as to the title to a public office, in the interest of an efficient performance of the duties thereof, the person having the *prima facie* right thereto evidenced by certificate or commission, and actually discharging the duties, as he is entitled to do by reason of such certificate or commission, should be entitled to the compensation incident to the office as pay for his services, thus making such person during said time not only the *de facto* officer, but practically the *de jure* officer. Such a condition is, of course, a hardship on the person ultimately found to have been entitled to the office, whose official emoluments have thus been abridged, but the public interests are paramount, and fully warrant legislation of the character here under consideration.

Much reliance is placed upon the fact that section 807 of the Code of Civil Procedure, in the chapter relating to the action that may be brought by the attorney-general in the name of the people of the state against one usurping or unlawfully holding or exercising a public office, etc., has always provided that if judgment be rendered upon the right of another person alleged to be entitled, in favor of such person, he may recover by action the damages which he may have

sustained by reason of the usurpation of the office by the defendant. Under the existing law, however, this cannot be held to authorize the recovery as damages, of the amount of salary or compensation of which the party has been deprived by reason of its payment to the incumbent under such circumstances as existed here. Conceding that an action may be maintained by the attorney-general under this chapter against an incumbent possessing the certificate of election or commission of office, for the purpose of contesting his right to the office on any of the grounds specified for the ordinary contest by an elector (Code Civ. Proc., sec. 1111, et seq.), the case, in the event of such action, is still within the provisions of section 936 of the Political Code, as amended in 1891. The language of that section is such that it necessarily includes any character of proceeding by which the title of such an incumbent is assailed, and entitles such incumbent to the compensation incident to the office pending the contest, as long as the conditions specified (possession of a valid certificate or commission and discharge of the duties of the office) continue. The rule thus declared by the legislature in the interest of a proper performance of the public service is paramount to the personal claims of either of the claimants, and necessarily excludes the recovery in any form, either as salary or damages, of the compensation awarded by and paid under the law to the incumbent. The case of *People* v. *Rogers,* 118 Cal. 393, [46 Pac. 740, 50 Pac. 668], does not touch upon the question here involved, and does not assist plaintiff.

The judgment of the superior court in the election contest, declaring plaintiff elected and annulling the certificate of election held by defendant, in no degree affected the right of plaintiff to hold the office, discharge its duties, and receive the compensation, until its affirmance on appeal, in view of the appeal from the judgment taken within ten days from the time it was given. His rights after such judgment and until the disposition of the appeal were the same as before judgment. The appeal so taken operated as an absolute suspension of the judgment, and continued the certificate of election in full force during its pendency. (Code Civ. Proc., sec. 1127; *Day* v. *Gunning,* 125 Cal. 527, [58 Pac. 172]; *Anderson* v. *Browning,* 140 Cal. 222, [73 Pac. 986]. See, also, *Wilson* v. *Fisher,* 148 Cal. 13, [82 Pac. 421].) As suggested in *Day*

v. *Gunning,* 125 Cal. 527, [58 Pac. 172], it might be wiser to provide that, pending an appeal in such a case, possession of the office should go to the party prevailing in the trial court, but that is a matter of policy within the legislative domain, and the legislature has not seen fit to so provide. Construing the amendment of 1891 liberally, with a view to the accomplishment of its manifest object, as we must, we are satisfied that it must be held to so change the old rule as to entitle an incumbent, under the circumstances therein specified, to the compensation incident to the office, whether the same be salary in the strict sense, or designated fees for specified services.

In view of what we have said, the complaint failed to state a cause of action.

The judgment is affirmed.

Sloss, J., Beatty, C. J., and Shaw, J., concurred.

HENSHAW, J., and McFARLAND, J., dissenting.—We dissent and adhere to the opinion and decision heretofore rendered in Department.

The following is the opinion above referred to, rendered in Department Two on the 17th of September, 1906:—

HENSHAW, J.—Plaintiff's cause of action against defendant arose out of the following facts: He and defendant were rival candidates for the office of sheriff of Butte County at the general election held in November, 1902. On the canvass of the returns by the board of supervisors defendant was declared elected and a certificate of election was issued to him. In January, 1903, he entered upon the discharge of the duties of his office. Plaintiff in due time contested defendant's election, his action was tried and resulted in a judgment in his favor on the twenty-fourth day of January, 1903. The judgment decreed that the certificate of election issued to the contestee, defendant and respondent herein, be annulled and set aside, and that the county clerk issue to contestant, plaintiff and appellant herein, a certificate of election to the office of sheriff. The county clerk duly issued this certificate of election, Chubbuck qualified, and on the

twenty-sixth day of January, 1903, demanded of Wilson possession of the office, which was refused. Wilson in due time appealed from the judgment in the election contest to this court, and on the twenty-fifth day of March, 1904, the judgment against him was affirmed. Upon the going down of the *remittitur* one month thereafter,—namely, on the twenty-fifth day of April, 1904,—Wilson surrendered the office to Chubbuck, who then took possession of it, and has since discharged its duties. Chubbuck then commenced his action, setting forth all these facts, and alleging that the respondent had wrongfully withheld said office from him from the twenty-fourth day of January, 1903, the date of the judgment of the superior court, until the twenty-fifth day of April, 1904, and prayed for damages for such unlawful withholding in the sum of eight thousand one hundred dollars, the amount of salary and fees received by defendant between these dates. Defendant demurred to this complaint upon the ground that it failed to state a cause of action in that it appeared that defendant had received the salary and fees pending the election contest, and that during all of that time the defendant held the certificate of election and was discharging the duties of the office. The demurrer was sustained and plaintiff appeals.

The action is in form for money had and received. It is based upon the well-established principle that a *de jure* officer, after recovering possession of the office, has a right of action against the intruder, and that the salary and fees received by such intruder are the measure of his damage. Such was the rule at common law, and such, generally, is the rule in all of the states which have adopted the common law as the basis of jurisprudence. (1 Chitty on Pleading, 100 m. p.; 8 Am. & Eng. 810; *Avis* v. *Stukey*, 2 Mod. 260; *Vaux* v. *Jefferson*, 2 Dyer, 114.) In *Dolan* v. *Mayor*, 68 N. Y. 274, [23 Am. Rep. 168], it is said: "The exclusion of a *de jure* officer is a legal wrong committed by the intruder. In a legal view it is immaterial that the defendant may have acted in good faith or that he supposed he had the better title. A good motive is not an adequate answer to a claim for indemnity for a violated right. There is a great preponderance of authority in support of the doctrine that the *de jure* officer can recover as against the intruder, the damages resulting from the intrusion."

Indeed, as we have read respondent's brief, that such a right of action exists, where not destroyed by statute, is conceded. But respondent insists that the statutory law of this state now deprives the successful litigant in a contested election case of this right. He admits that under section 807 of the Code of Civil Procedure such a right exists, as it has been declared to exist in *People ex rel. Drew* v. *Rogers,* 118 Cal. 383, [46 Pac. 740, 50 Pac. 668], where the action is strictly for usurpation of office under section 803 of the Code of Civil Procedure, but argues that this right is limited to that particular class of actions because of the present reading of section 936 of the Political Code.

Prior to 1891 that section read as follows: "When the title of the incumbent of any office in this state is contested by proceedings instituted in any court for that purpose, no warrant can thereafter be drawn or paid for any part of the salary until such proceedings have been finally determined." In 1891 the legislature amended this section by adding the following: "provided, however, that this section shall not be construed to apply to any party to a contest or proceeding now pending or hereafter instituted who holds the certificate of election or commission of office, and discharges the duties of the office; but such party shall receive the salary of such office the same as if no such contest or proceeding was pending." Upon the construction of this section as amended, respondent cites *Bledsoe* v. *Colgan,* 138 Cal. 34, [70 Pac. 924]; *Wilson* v. *Fisher,* 140 Cal. 188, [73 Pac. 850]; and *Anderson* v. *Browning,* 140 Cal. 222, [73 Pac. 986], and, from his reading of these cases, declares that they are absolutely determinative of the case, and leave no ground for argument as to the soundness of the ruling of the court in sustaining the demurrer. It is important to consider, therefore, just what these cases do decide. *Bledsoe* v. *Colgan* was an original proceeding for mandate, brought against the state controller, asking that he be ordered to draw his warrant in favor of Bledsoe for salary as judge of the superior court. It was shown that in a *quo warranto* proceeding brought by Bledsoe to contest the right of John L. Campbell to hold the office, the trial had resulted in a judgment that Bledsoe had been duly elected to the office and should take possession thereof upon qualifying and taking oath, and that subsequently Bled-

soe had so qualified and taken possession of the office, and had continuously performed the duties thereof. The defendants in the *quo warranto* proceedings had appealed from the judgment, and the appeal was pending at the time of this application for mandate. This court held that, under these circumstances, the judgment in mandate could not be considered the equivalent of the certificate of election contemplated by section 936 of the Political Code, saying that the commission of office which he was given by the judgment was not the same as the certificate of election which the law declared he must hold to become entitled to the salary while litigation was pending. "Prior to 1891," says this court, "when litigation arose contesting the title to an office, no salary could be paid to the incumbent of the office until that litigation was finally determined. But the legislature, recognizing the extreme harshness of this rule, made the exceptions found in the aforesaid proviso." Thus, what *Bledsoe* v. *Colgan* decides is, first, that the proviso to section 936 of the Political Code is valid and entitles the state, or other disbursing officer, to pay, and the incumbent who holds a certificate of election to receive the salary or emoluments of the office. *Anderson* v. *Browning,* 140 Cal. 222, [73 Pac. 986], was an appeal from a judgment of the superior court of Yolo County, directing the issuance of a peremptory writ of mandate requiring the defendant, as auditor of the county, to draw his warrant on the county treasurer in favor of the plaintiff as salary of the plaintiff as district attorney. Anderson had been declared elected and a certificate of election had been issued to him, and he had qualified by taking the official oath and had entered upon the discharge of his duties. His opponent, Huston, had instituted a contest of Anderson's right, and a trial had resulted in a judgment in favor of Huston. Anderson had appealed to this court and the appeal was pending at the time of the demand made upon the auditor, who refused to draw his warrant under the indicated circumstances. It was held that mandate should issue, that the appeal by Anderson stayed the operation of the judgment, and that the certificate of election continued unimpaired during the pendency of the appeal; therefore, that Anderson occupied the position of incumbent who held a certificate of election, and, under section 936 of the Political Code, was entitled to draw the salary.

*Wilson* v. *Fisher,* 140 Cal. 188, [73 Pac. 850], was in prin-
ciple and in decision identical with the last-cited case.   Col-
lectively, then, these cases decide that under the proviso of
section 936 of the Political Code the incumbent, who has
received the certificate of election, is entitled to draw the
salary of the office, and the state, or county, or municipality,
is compelled to pay that salary until final determination of
the right upon appeal, even though the trial court may have
decided against his claim of title to the office.   But in none of
these decisions, it will be noticed, is there a single word touch-
ing the right of private action which exists against one who
is a usurper of office.   And an officeholder who continues to
hold office after judgment by the superior court, notwithstand-
ing that his appeal may suspend the operation of that judg-
ment, is a usurper from the date of that judgment, if the
decision upon appeal shall be adverse to him. · Such has been
the settled law of this state since *Dorsey* v. *Smyth,* 28 Cal. 21,
where it is said: "It was the duty of defendant when judg-
ment was rendered against him in the contest, to have sur-
rendered the office.   He was presumed to know the law, and
acted at his peril."   So in *People* v. *Potter,* 63 Cal. 127, it is
said: "After the judgment in the superior court there was
no legal obligation upon him to hold; on the contrary, the law
made it his duty to surrender the office to his successor.   If
he did not he acted at his peril."

What then is the meaning of the amendment to section 936
of the Political Code?   Before that amendment, while a con-
test over an office was pending and until the final decision of
such contest, the disbursing officers could draw no warrant in
favor of either party without peril of becoming themselves
liable in case, ultimately, title should be found in another, for
the rule of law was that the salary was an incident, not to
the tenure, but to the legal title, and in whomsoever the legal
title should be shown to exist, to him belonged the salary.   So
far, therefore, as the disbursing officers were concerned, since
they could not pay, excepting at their own peril, the result was
that no payments were made at all, and this resulted in injury
to the service of the state, since it must often follow that
service would not be performed well, if at all, by one who
would have to look elsewhere than to the salary for his very
living expenses during a protracted period of litigation.   In

contemplation of this situation, which had actually arisen, the amendment was passed, and, for the good of the public service, it declared that, as between the state and the incumbent holding a certificate, the state would pay to him the salary of the office, and the disbursing officers, upon such payment, would be relieved from all liability. (*Wilson* v. *Fisher,* 140 Cal. 188, [73 Pac. 850].) It nowhere said that as between such incumbent and the legal and rightful claimant of the office such rightful claimant would not have this action against the incumbent for the illegal and unlawful withholding. The government is keenly interested, as a matter of fundamental principle, in seeing that its duly elected officers shall have and hold their offices. But to deprive such a duly elected officer from ever receiving the emoluments of an office by ordering the salary paid to an incumbent holding unlawfully, and then to say that the legal officer should have no right of action for a recovery against such an incumbent, would be to put a premium upon frivolous appeals, and be a declaration that the state was not interested in seeing that its legally elected and qualified officers were seated, but, to the contrary, that it designed the emoluments of an office to go to him who, by hook or crook, could get possession of it with a certificate of election. Moreover, as we have seen, section 807 of the Code of Civil Procedure does make provision for the recovery of damages by the one who proves his legal title against an intruder, and these damages are, of course, the cost of his litigation, with the salary or fees of the office which the intruder has received. An action for usurpation of office can be brought as well against one holding the certificate of election and drawing the salary as can an election contest pure and simple. Shall it be said that this private right to damages depends merely upon the form of action, and that if the claimant adopts the expeditious mode of an election contest, he shall not have a right to recover damages, while if he adopts the more circuitous proceeding of obtaining permission of the attorney-general to proceed in *quo warranto,* if successful in this litigation, he may recover these damages? There is neither logic, nor common sense, nor yet the mandate of the law, to compel such a conclusion.

As we have seen, the defendant became an intruder by holding possession of the office after the judgment of the superior

court. He had, of course, the right to appeal, and he had the right to draw the salary until the appeal was determined. Upon the other hand, he could have surrendered the office and still have prosecuted his appeal. Acting as he did, he acted at peril of the result.

It is, therefore, ordered that the judgment be reversed and the demurrer be overruled with leave to the defendant to answer.