[S. F. No. 5758.   In Bank.—June 8, 1911.]

## THOMAS R. BANNERMAN, Petitioner, v. THOMAS F. BOYLE, as Auditor of the City and County of San Francisco, Respondent.

PUBLIC OFFICE—DE FACTO OFFICER—RIGHT TO SALARY—COMPELLING PAYMENT BY DISBURSING OFFICER—WANT OF TITLE TO OFFICE A DEFENSE.—Prior to the amendment of 1891 to sections 936 and 937 of the Political Code it was .the settled law of this state that, although no private person could question the title of one holding a public office, and the official acts of a mere *de facto* officer were valid · as far as private rights affected thereby were concerned, nevertheless, as a *de facto* officer, he was not legally entitled to the salary fixed by law to be paid out of the public funds, and he could not compel the public disbursing officer to pay such salary. The fact that he was not lawfully entitled to the office was a complete defense to any action or proceeding by him to compel payment to him of the salary thereof out of the public treasury.

ID.—SECTIONS 936 AND 937 OF POLITICAL CODE—CONTEST OVER TITLE TO OFFICE—INTRUDER NOT ENTITLED TO SALARY.—Prior to their amendment in 1891 the object of sections 936 and 937 of the Political Code, in providing that when the title of an incumbent to any office is contested by proceedings instituted in any court for that purpose "no warrant can thereafter be drawn or paid for any part of his salary until such proceedings have been finally determined," was to prevent the intruder into any office, the title to which was in litigation, from receiving the salary accruing during the litigation. They did not apply, except where there was an action involving the title to the office, and only while it was pending.

ID.—EFFECT OF AMENDMENT OF 1891—NO ACTION PENDING CONCERNING TITLE TO OFFICE.—The proviso added to section 936 of that Code by the amendment of 1891, that "this section shall not be construed to apply to any party to a contest or proceeding now pending or hereafter instituted who holds the certificate of election or commission of office and discharges the duties of the office; but such party shall receive the salary of such office, the same as if no such contest or proceeding was pending," did not enlarge the application of the section or extend it to cases where no action had been instituted concerning the title to the office.      ·

ID.—DE FACTO OFFICER WITH COLOR OF TITLE—RIGHT TO SALARY.—Sections 936 and 937 of the Political Code, as so amended, do not authorize a *de facto* officer with color of title to receive the salary of the office, irrespective of whether the title he claims is valid or invalid, if no proceeding or action to oust him or contest his title is pending.

ID.—CONSTRUCTION OF STATUTE—EVILS TO BE CURED.—In construing an ambiguous statute, the evil to be cured and the object to be accomplished are proper matters for consideration and often point clearly to the true meaning and application of the act.

ID.—MANDAMUS TO COMPEL PAYMENT OF SALARY—TITLE TO OFFICE MAY BE TRIED.—In a proceeding in *mandamus,* by one asserting that he is a *de jure* officer, to compel another public officer, not the claimant, to perform a duty pertaining to his office,—that is, to audit and approve the plaintiff's demand for his salary,—the court can try and decide any question in issue, including the truth of the allegation that the plaintiff holds the legal title to the office. In such a case the rule that prevails between rival claimants, that *mandamus* will not lie to try the title to an office, is inapplicable.

ID.—SAN FRANCISCO — CHARTER PROVISIONS — REMOVAL OF APPOINTED OFFICERS BY MAYOR FOR CAUSE.—The provisions of the charter of the city and county of San Francisco show that the application of the provision of section 18 of article XVI thereof, giving the mayor power to remove any appointed officer "for cause," is practically confined to the members of the several boards appointed by him.

ID.—NOTICE AND HEARING NECESSARY TO REMOVAL FOR CAUSE.—Such power can be lawfully exercised by the mayor only by formulating the charges constituting the "cause," giving the officer notice thereof and affording him an opportunity to be heard in his defense before conviction and removal.

ID.—REMOVAL FOR CAUSE—OFFICER APPOINTED FOR FIXED TERM.—The great weight of authority is to the effect that where an officer is appointed for a fixed term and it is provided that he may be removed during the term "for cause," without other qualifying words, such removal cannot be made except after notice and a hearing.

ID.—NOTICE BY MAYOR TO SUPERVISORS—RECORD OF REMOVAL.—Section 20 of article XVI of the charter, providing that "when the mayor shall remove an appointed officer from office, he shall immediately notify the board of supervisors of such removal, and furnish it with a statement of the cause therefor, which statement shall be entered in the record of its proceedings," does not dispense with the necessity of notice and a hearing prior to the removal. That section does not refer at all to the method of removal or the procedure thereon, but merely requires a subsequent public notice and record of a removal already made.

ID.—BOARD OF EDUCATION—REMOVAL WITHOUT NOTICE AND HEARING IS VOID.—An attempted removal by the mayor of a member of the board of education of the city and county of San Francisco during the term of office for which he had been regularly appointed, without any notice to him or any opportunity to make a defense, is void.

APPLICATION for a Writ of Mandamus directed to the Auditor of the City and County of San Francisco.

The facts are stated in the opinion of the court.

Charles S. Wheeler, J. F. Bowie, and Thomas E. Hayden, for Petitioner.

Edward F. Moran, Garret W. McEnerney, and Andrew F. Burke, for Respondent.

SHAW, J.—This is an original proceeding in this court for a writ of mandate to compel the defendant to audit and approve plaintiff's demands against the city and county of San Francisco for his monthly salary as member of the board of education, for each month from March, 1910, to December, 1910, inclusive.

The principal defense is that the plaintiff, during that period, had no right or title to the office, but was a mere usurper. It is conceded that he was in exclusive possession of the office as a *de facto* officer, and performed all the duties of the office during the time for which he claims his salary.

The plaintiff claims that this gives him the right to the salary, regardless of the want of title, or of the fact that another person held title to the office.

Prior to the amendment of 1891 [Stats. 1891, p. 28] to sections 936 and 937 of the Political Code, it was the settled law of this state that, although no private person could question the title of one holding a public office and the official acts of a mere *de facto* officer were valid, as far as private rights affected thereby were concerned, nevertheless, as a *de facto* officer, he was not legally entitled to the salary fixed by law to be paid out of public funds, and he could not compel the public disbursing officer to pay such salary. The fact that he was not lawfully entitled to the office was a complete defense to any action or proceeding by him to compel payment to him of the salary thereof out of the public treasury. (*Dorsey* v. *Smyth,* 28 Cal. 25; *Stratton* v. *Oulton,* 28 Cal. 51; *Carroll* v. *Siebenthaler,* 37 Cal. 195; *People* v. *Potter,* 63 Cal. 128; *Burke* v. *Edgar,* 67 Cal. 184, [7 Pac. 488]; *Ward* v. *Marshall,* 96 Cal. 155, [31 Am. St. Rep. 198, 30 Pac. 1113]; *Adams* v. *Doyle,* 139 Cal. 680, [73 Pac. 582].) This is also the general rule in other states. (Mechem on Officers, sec. 331; Throop on Public Officers, sec. 517.) "In any action by a

person claiming to be a public officer for the fees or compensation given by law, his title to the office is in issue, and if that is defective and another has the real right, although not in possession, the plaintiff cannot recover. Actual incumbency merely gives no right to the salary or compensation." (*Dolan* v. *Mayor*, 68 N. Y. 279, [23 Am. Rep. 168].)

The plaintiff claims that this rule was changed and the contrary rule established by the amendment of sections 936 and 937 aforesaid. The amended section 936 is as follows, the amendment consisting of the proviso:—

"936. When the title of the incumbent to any office in this state is contested by proceedings instituted in any court for that purpose, no warrant can thereafter be drawn or paid for any part of his salary until such proceedings have been finally determined; provided, however, that this section shall not be construed to apply to any party to a contest or proceeding now pending or hereafter instituted, who holds the certificate of election or commission of office and discharges the duties of the office; but such party shall receive the salary of such office, the same as if no such contest or proceeding was pending."

Section 937 is as follows:—

"As soon as such proceedings are instituted, the clerk of the court in which they are pending must certify the facts to the officers whose duty it would otherwise be to draw such warrant or pay such salary, except in the cases included in the proviso to the foregoing section." The amendment of 1891 to this section merely added the words stating the exception.

In construing an ambiguous statute, the evil to be cured and the object to be accomplished are proper matters for consideration and often point clearly to the true meaning and application of the act. The provisions of sections 936 and 937, as they stood before 1891, were first enacted as statute law in 1860, but that act applied only to state officers. The rule generally prevailing in other states was that payment to the *de facto* officer would protect the public against a second payment to the rightful claimant, whose sole remedy was an action against the usurper. (*Chubbuck* v. *Wilson*, 151 Cal. 164, [90 Pac. 524].) But in *Dorsey* v. *Smyth*, 28 Cal. 25, decided in 1865, and *Carroll* v. *Siebenthaler*, 37 Cal. 195, decided in 1869, it was held that the rightful claimant of a

county office was entitled to payment of the salary from the public funds, although it had been previously paid to an opposing claimant who had been in possession of the office and had performed the duties thereof during the litigation between them concerning the title thereto. The original code sections, in 1872, to remedy this condition of the law, extended the statute of 1860 to local public officers. The object was to prevent the intruder into any office, the title to which was in litigation, from receiving the salary accruing during the litigation. It is clear that they did not apply, except where there was an action involving the title to the office, and only while it was pending.

If section 936, prior to the amendment of 1891, did not apply to an intruder whose title was not in litigation, but was merely a provision for withholding the salary accruing during litigation over the title, so that it might be afterwards paid to the person who finally prevailed in the action, it is manifest that the proviso added by the amendment does not enlarge its application or extend it to cases where no action has been instituted concerning it. The first clause of the proviso declares, in effect, that the *section* does not apply to a contest or proceeding, if the party who holds the certificate of election or commission also discharges the duties of the office. It restricts the application of the entire section to the extent of the exception stated therein.

It is urged that the last clause of the proviso is broader and that it enacts a general rule to the effect that if the person who discharges the duties of an office has the regular evidence of title thereto, he shall receive the compensation fixed by law, although there has been no action or proceeding to oust him or determine his title. There is no language indicating that this was the intent of the legislature. The clause does not so declare. It says "but such *party* shall receive the salary of such office, the same as if no such contest or proceeding was pending." This is not a declaration that if no proceeding or action to oust him or contest his title is pending, the *de facto* officer with color of title shall receive the salary thereof, whether the title he claims is valid or invalid. The use of the word "party," in connection with the preceding part of the section, limits its application to cases where a suit is pending to determine the title. It does not *enact* any rule

applicable to a case where there is no contest. It merely de-
clares that if there is a contest, the party with the regular
evidence of title shall have the same right that he would have
if there was no contest, and is silent as to what his right would
be in the latter case. The language of the entire section shows
that the proviso was not intended to apply to this rule at all,
except in the specified case where one party to litigation over
the title to an office performs its duties and holds the regular
color of title, that is, a certificate of election, or a commission.
Under the terms of the section, if the claimant who obtains
possession of the office and acts as such during the contest
against him by the rightful owner is the one who does not hold
the certificate or commission, the salary is withheld pending
the contest. No right is given to such incumbent by the
section. The section does not declare what shall be done with
the salary so withheld in such a case, if the rightful owner
prevail. That question is to be decided by reference to the
general rule aforesaid that the right to the salary goes with
the title to the office. Not being within the exception made
by section 936, the general rule controls, the intruder could
not get any of the salary, and the person who held the certifi-
cate or commission finally adjudged to be valid, would be enti-
tled to receive it, although he did not discharge the duties of
the office.

Counsel for plaintiff also contend that the clause in section
937, requiring the clerk to give notice of the institution of the
action to the officers "whose duty it would otherwise be" to
pay the salary, by implication declares that an intruder is
entitled to the salary if no action concerning his title is begun.
Positive legislation changing established rules of law is not
made in this manner. The clause in question alludes merely
to the fact that, but for the notice required, the warrants
would in due course be drawn to the person appearing to be
lawfully entitled to the office. It is obvious that it was not
designed to, and does not, direct that the warrants must be
drawn to the actual incumbent, regardless of his right.

There is nothing contrary to these conclusions in *Wilson* v.
*Fisher,* 140 Cal. 188, [73 Pac. 850]; *Anderson* v. *Browning,*
140 Cal. 222, [73 Pac. 986]; *Tout* v. *Blair,* 3 Cal. App. 180,
[84 Pac. 671]; *Merkley* v. *Williams,* 3 Cal. App. 268, [84
Pac. 1015]; or *Chubbuck* v. *Wilson,* 151 Cal. 162, [90 Pac.

524], cited by plaintiff's counsel. None of them involved the question here presented. They decide several of the questions which arise when there is a litigation to determine the title to an office, but nothing whatever concerning the withholding of payment, where no action or proceeding to determine such title has been instituted.

There is some discussion in the briefs upon the proposition that the question of title cannot be raised in a suit for *mandamus,* referring to the well-known rule that *mandamus* will not lie to try the title to an office. This rule has no application. Rival claimants, it is true, cannot thus try their title. But this is not an action between rival claimants. It is an action by one asserting that he is the *de jure* officer to compel another public officer, not the claimant, to perform a duty pertaining to his office, that is, to audit and approve the plaintiff's demand for the salary. It is clearly within the terms of the statute authorizing *mandamus.* The court can try and decide any question in issue. It has the same power, in *mandamus,* to determine the truth of the allegation that the plaintiff holds the legal title to the office, as it has to determine whether or not the defendant Boyle is the auditor, and whether or not he has refused to approve plaintiff's demand. It has been recognized as a legitimate issue for determination in *mandamus.* (*Morton* v. *Broderick,* 118 Cal. 474, [50 Pac. 644]; *Davenport* v. *Los Angeles,* 146 Cal. 508, [80 Pac. 684]; *McKannay* v. *Horton,* 151 Cal. 711, [121 Am. St. Rep. 146, 13 L. R. A. (N. S.) 661, 91 Pac. 598].)

We conclude that the title may be questioned, under the facts assumed, by the auditor, in a *mandamus* proceeding against him. This makes it necessary to determine whether or not plaintiff held the title to the office during the time for which he claims his salary.

The San Francisco charter provides that the board of education shall be composed of four school directors appointed by the mayor, whose terms of office shall be four years, so classified that the term of one of them expires each year. (Stats. 1899, p. 317.) Bannerman was appointed in 1909, to hold the remainder of an unexpired term ending on January 8, 1911. On February 15, 1910, the mayor without any notice or hearing, removed, or attempted to remove, him from said office, and appointed James E. Power to fill the vacancy

assumed to have been caused thereby. Bannerman refused to vacate the office and denies the validity of the act of removal.

It is claimed that the charter of San Francisco confers this power upon the mayor. The provisions of the charter concerning the removal of officers are found in article XVI. (Stats. 1899, pp. 361, 362.) Section 18 is as follows:—

"Any elected officer, except supervisor, may be suspended by the mayor and removed by the supervisors for cause; *and any appointed officer may be removed by the mayor for cause.* The mayor shall appoint some person to discharge the duties of the office during the period of such suspension."

Section 19 provides that when the mayor suspends an elected officer, he must present charges against him to the board of supervisors and serve them upon the officer suspended, and that, after a hearing before the board, that body may remove him. There are additional provisions concerning appointed officers, as follows:

"Sec. 20. When the mayor shall remove an appointed officer from office, he shall immediately notify the board of supervisors of such removal, and furnish it with a statement of the cause therefor, which statement shall be entered in the record of its proceedings."

"Sec. 21. Unless otherwise provided by law or by this charter, any officer, board or department authorized to appoint any deputy, clerk, assistant or employee, shall have the right to remove any person so appointed."

The charter authorizes the mayor to appoint a secretary, an usher, a stenographer, and a typewriter, and provides that they shall hold their positions "at the pleasure of the mayor." Some of the other principal officers have authority to appoint and remove at pleasure a secretary or other confidential officer. The only officers, except the personal attachés above mentioned, who are to be appointed by the mayor, are the members of the several boards which control the respective departments of the municipal government, the board of education being one of them. There are eight of these boards. All other subordinate officers, deputies, clerks, and employees are chosen by the respective boards, or by the elected officers under whose supervision they serve, and the authority to remove them is, by section 21 aforesaid, lodged in the person or board which

appoints them. We do not refer here to those who compose
the classified civil service, concerning whose tenure and re-
moval elaborate special provisions are made. This recital of
the provisions of the charter clearly shows that the application
of the provision of section 18 giving the mayor power to re-
move any appointed officer "for cause" is practically confined
to the members of the several boards appointed by him. It
remains to inquire how this power may lawfully be exercised,
whether by a summary removal without notice or hearing, or
only by formulating the charges constituting the "cause,"
giving the officer notice thereof and affording him an oppor-
tunity to be heard in his defense, before conviction and
removal.

Upon this question the great weight of authority is to the
effect that where an officer is appointed for a fixed term and
it is provided that he may be removed during the term "for
cause," without other qualifying words, such removal cannot
be made except after notice and a hearing. Mr. Throop states
it thus: "The doctrine that an officer can be removed only
upon notice, and after a hearing, where the tenure of his office
is during good behavior, or until removal for cause, or for
a definite term, subject to be removed for cause, . . . may
be regarded as settled law in this country." (Throop on Pub-
lic Officers, sec. 364.) Mr. Mechem says: "Where the appoint-
ment or election is made for a definite term or during good
behavior, and the removal is to be for cause, it is now clearly
established by the great weight of authority that the power
of removal cannot, except by clear statutory authority, be
exercised without notice and hearing, but that the existence
of the cause, for which the power is to be exercised, must first
be determined after notice has been given to the officer of the
charges made against him and he has been given an oppor-
tunity to be heard in his defense." (Mechem on Officers, sec.
454.) The same is said to be the rule by Mr. Dillon. (Dillon
on Municipal Corporations, sec. 250.) A large number of
decisions are cited in support of this doctrine. The following
apply the doctrine to cases like the present one, where the
tenure is for a fixed term: *Ham* v. *Boston,* 142 Mass. 95, [7
N. E. 540]; *State* v. *St. Louis,* 90 Mo. 22, [1 S. W. 757];
*Field* v. *Commonwealth,* 32 Pa. St. 484; *Board* v. *Darrow,* 13
Colo. 468, [16 Am. St. Rep. 215, 22 Pac. 784]; *Dullam* v.

*Wilson,* 53 Mich. 407, [51 Am. Rep. 128, 19 N. W. 112]; *Page* v. *Hardin,* 8 B. Mon. (Ky.) 672; *State* v. *Bryce,* 7 Ohio St. (pt. 2) 82; *State* v. *Hoglan,* 64 Ohio St. 532, [60 N. E. 627]; *State* v. *Smith,* 35 Neb. 13, 33, [52 N. W. 700, 16 L. R. A. 792]; *Biggs* v. *McBride,* 17 Or. 651, [5 L. R. A. 115, 21 Pac. 878]; *Singleton* v. *Charleston,* 2 Bay, (S. C.), 105; *King* v. *Gaskin,* 8 T. R. 209; *Ramshay's Case,* 18 Ad. & El. (N. S.) 190; *Queen* v. *Archbishop,* 1 Ell. & El. 545. Many of these are cases where the power to remove was qualified, as here, simply by the words, "for cause"; in others particular causes are specified, such as "official misconduct," "inability or misbehaviour," and the like. The distinction is not material, The words "for cause," without more, imply good cause; the existence of some fact which would constitute a reasonable cause for the removal.

The defendant refers to the decision of this court in *Matter of Carter,* 141 Cal. 316, [74 Pac. 997]; as establishing the rule that power to remove "for cause," without other qualification, authorizes a summary removal, without notice or hearing. The remarks to that effect therein go too far and were unnecessary to the decision. The law considered in that case was a provision in the charter of the city of San Diego. It provided that the mayor could "remove for cause" any officer appointed by him, but added that "in case of such removal" he should give written notice thereof, "stating the cause, to the person *removed,*" and that he should immediately notify the common council of his action and the reasons therefor. What was really decided in that case on this point was that these additional provisions so qualified the words "remove, for cause," that the entire provision must be interpreted to mean that the removal might be made before the giving of the notice and without any hearing, and hence that it was not a judicial act. The clause requiring notice of the removal "to the person *removed,*" being in the past tense, and being the only notice required, the language necessarily implied that the removal was to be made before the notice thereof was given to the officer. Section 18 does not contain such provisions and the decision in the Carter case does not apply. The Carter case is similar to *O'Dowd* v. *Boston,* 149 Mass. 443, [21 N. E. 949), where the members of the council were given power to remove officers "for such cause as they may deem sufficient and shall

assign in their order for removal." This was held to imply a removal without notice or hearing, and on that ground the case was held not to come, within the general rule above stated. The case of *State* v. *Grant*, 14 Wyo. 41, [116 Am. St. Rep. 982, 1 L. R. A. (N. S.) 588, 81 Pac. 795, 82 Pac. 2], cited by respondent, is of like effect. There the governor was given power to remove for any cause deemed sufficient by him "provided: reason for such removal shall be filed in the office of the secretary of state in writing, subject to inspection by any person interested." This was held to prescribe the procedure and to imply that no previous notice to the officer, nor any hearing, was necessary. The court recognizes the general rule above stated, but declares this to be an exception because the statute makes it so. The cases of *State* v. *Kennelly*, 75 Conn. 316, [55 Atl. 555], and *Sullivan* v. *Martin*, 81 Conn. 585, [7 Atl. 783], also cited by the respondent in support of the proposition that the mayor's summary removal was valid, are not in point on that question. In each of them there was a notice, a hearing, and thereupon a removal. In the latter the hearing was expressly required by the statute. The point decided in each case was that the hearing and removal were not *quasi* judicial proceedings, but were executive acts, that the facts and evidence were not subject to review by the courts and that only the regularity of the proceeding could be inquired into.

The provisions of section 20 do not bring it within the rule of the Carter case and similar cases. They do not refer at all to the method of removal or the procedure thereon, but are directed to another object. The mayor is not required to make or keep any record of his acts. But for section 20, he might remove an officer without there being any record whatever to show the fact, or the cause thereof, and the other officers of the city, and citizens who might have to deal with the removed officer, would be without notice or means of definite and reliable information of the fact. It is obvious from the language of section 20 that its purpose was merely to require a public notice and record of a removal already made. It refers to the removal as a fact accomplished, but it does not prescribe a mode of procedure therefor. Every act it requires is an act to be done subsequent to the act of removal and not is a part of it. So understood, there is nothing in its terms which implies an intent to give to the clause conferring power

to remove "for cause," any other than its well-established meaning, that is, a sufficient cause proven upon a hearing after reasonable notice.

Certain other provisions of the charter furnish strong additional reasons for this interpretation of the removal clause. As before stated, it applies only to the members of the several boards appointed by the mayor. The mayor's term of office is only two years. The members of these boards are appointed for fixed terms, in some boards for three years, and in the others for four years, but in each case the terms begin in successive years so that one member is regularly to be appointed each year. Some boards have five members, with four-year terms, in which case two terms expire every fourth year. Thus the members holding over in each board are always in the majority. The obvious purpose was to have always on each board two or more members who were familiar with its affairs, and to prevent sudden changes of policy and secure stability and efficiency in the administration of the municipal affairs. No mayor could, in regular course, change the personnel of a majority of any board in less than two years from his advent, except in the case of the board of public works and the civil service commission, which have three members and three-year terms, making. a change possible in a little over twelve months. This plain policy of the charter might be practically overthrown if the mayor were given power to remove the members summarily by the simple process of stating a cause in writing, with no investigation to show whether the cause existed in fact or only in fancy, and with no notice to the officer or opportunity to prove himself not guilty of the alleged dereliction, incapacity, or incompetency. It would need much more explicit language than we find in the provisions concerning the removal of these officers to authorize an interpretation so destructive of this wise and important, part of the plan of municipal government.

In this case the mayor gave the board of supervisors notice of the removal of Bannerman and furnished it with a statement of the cause alleged therefor, which was duly recorded. But no notice was given to Bannerman thereof, and he had no opportunity to make a defense. We are of the opinion that the act of removal was void.

The cause alleged was that Bannerman had joined in

appointing an ineligible person as secretary of the board and had approved the payment of his salary. We have assumed that this alone, without any allegation that it was done corruptly or in bad faith, was a sufficient cause. We have also assumed that it is competent for the charter of San Francisco to provide for the removal of a member of the board of education, although he may be, in law, an officer of the state, administering a branch of the state school system, and the constitution (art. XI, sec. 8½), it is claimed, does not expressly allow the city charter to do more than fix his term of office and the time and mode of appointment or election. We find it unnecessary to decide either of these propositions, and we express no opinion concerning them.

It follows that the petitioner had title to the office during the period in question, and that he is entitled to the *mandamus*.

Let a peremptory writ issue as prayed for.

Sloss, J., Angellotti, J., Henshaw, J., Lorigan, J., and Melvin, J., concurred.