(90 Misc. Rep. 407)

### CITY OF BUFFALO v. KELLNER et al.

(Supreme Court, Equity Term, Erie County. May 12, 1915.)

1. MUNICIPAL CORPORATIONS ☞601—POLICE POWER—REGULATION OF USE OF PROPERTY.

Under the police power merely, neither the Legislature, nor a city council exercising delegated legislative powers, can impose restrictions upon the use of private property induced solely by æsthetic considerations, such as the placing of buildings on lots, which have no relation to the health, safety, or comfort of the public, although reasonable building ordinances may be enacted and enforced to protect the public health and safety, as by requiring sanitary plumbing, proper fire escapes and ventilation, etc.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1333; Dec. Dig. ☞601.]

2. MANDAMUS ☞87—GRANTING OF BUILDING PERMIT—DISCRETION.

The granting or withholding of a building permit by the proper officer is not a matter of discretion, and the applicant, so long as he complies with the valid building laws of the state or the ordinances of the city, may enforce his right by mandamus.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 189–194; Dec. Dig. ☞87.]

3. MUNICIPAL CORPORATIONS ☞601—REGULATION OF BUILDING—CHARTER.

Buffalo City Charter, § 17, subd. 5, gives the common council power to prescribe general regulations for the erection of buildings in the city, to define the limits within which wooden buildings shall not be erected, to grant special permits for the erection of certain buildings, etc. Section 292 requires an owner about to build to file certain plans and statements concerning the intended use of the building, etc. A property owner secured a permit in the manner specified by city ordinance adopted under such charter provisions, licensing him to place a wooden building on the rear of his lot. He in fact erected such building on the front of the lot. *Held*, that the city charter contained no specific provision prohibiting or conferring on the city the right to forbid an owner to place his buildings as he might choose, provided he complied in other respects with the building laws of the state and city; the provision of section 292 that, "before the construction or remodeling of any building in the city is commenced, the owner shall file with the deputy building commissioner a sworn statement of the character and use of the building he proposes to erect, and its location on his premises," not operating to deprive the owner of the right to determine the location of the building, but simply requiring that on making application for a building permit he shall supply information as to the proposed location.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1333; Dec. Dig. ☞601.]

4. MUNICIPAL CORPORATIONS ☞623—REGULATION OF BUILDING—ORDINANCE —VIOLATION—ABATEMENT OF BUILDING.

An ordinance of the city of Buffalo required a prospective builder, in his application for a building permit, correctly to state the location on his lot of the proposed structure. An owner made such application, stating that the erection would be in the rear, but placed the structure on the front of his lot. The city sued to secure the removal of such building, under Buffalo City Charter, § 17, subd. 5, providing that every building erected or built contrary to any ordinance thereby authorized should be deemed a common nuisance and might be abated as such. *Held*, that a charge that the building had been misplaced did not charge a nuisance, as a nuisance cannot be made such by mere declaration of charter or ordinance, and that it was not a proper case for the court to extend to the city equitable relief, which may be invoked only where there is no ade-

quate remedy at law, and the granting of which is not of strict right, but in the discretion of the court, since it could not be said that under the circumstances the penalty of $100 imposed by the building permit ordinance for violation of its provisions did not meet all requirements of the situation.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1371–1374, 1383, 1384; Dec. Dig. ☞623.]

Action by the City of Buffalo against John S. Kellner and another. Complaint dismissed.

Clayton M. Smith, of Buffalo, for plaintiff.
Godfrey M. Frohe, of Buffalo, for defendants.

WHEELER, J. The city of Buffalo seeks in this action to compel the defendants to remove a small, one-story frame office building, about 9 feet by 20 feet in size, from its present location on the front of the lot on the northeast corner of Kingsley street and Roehrer avenue, on the ground that the building in question was erected without the necessary permit or license from the city authorities, and for a judgment declaring the building an unlawful structure.

The evidence shows that Mr. Kellner owns the lot in question, and on or about August 20, 1914, presented to the deputy building commissioner of the city a petition to erect a frame office and shed on the rear of the lot known as 130 Kingsley street; the size of the building to be 9 feet wide, 20 feet long, and 10 feet high. The deputy building commissioner approved the petition, and filed it with the city clerk of the city.

The provisions of the charter and ordinances of the city require that such petition be presented to the common council for its action; but, owing to the fact that the petition was filed during the summer recess, the common council had made provision for such application by a resolution duly adopted, which authorized the deputy building commissioner to issue building permits during the summer recess, provided that such applications or petitions had the approval of the alderman of the ward in which it was proposed to erect a building, or a member of the board designated by him.

Mr. Kellner's petition was approved by the alderman of the ward and the chairman of the board of councilmen; and on the 22d day of August, 1914, the defendant Kellner filed with the deputy building commissioner a statement, in which he set forth in substance that he proposed to erect a one-story frame building on the rear of the premises 130 Kingsley street, of the dimensions previously stated. Thereupon the deputy building commissioner issued to the defendant Kellner a building permit for the erection of the building described in the petition and statement. The lot in question is some 114 feet deep.

Mr. Kellner thereafter, without further permission, proceeded to erect the office in question; but, instead of placing it on the *rear* of the lot, he erected it on the *front* of the lot, and only about 2½ feet from the line of Kingsley street. It is claimed, further, the building, instead of being 10 feet high, is in fact 13 feet 9½ inches high. The building is set on piers, and this measurement is from the surface of the ground.

Section 17 of the charter confers upon the common council power and authority:

"(5) To prescribe general regulations for the erection of all buildings in the city. To define the limits within which wooden buildings shall not be erected, placed or rebuilt, and the manner in and the materials of which all buildings shall be constructed within such limits; also to define outer limits in which wooden buildings may be constructed, placed or rebuilt, under such regulations as may be imposed by ordinance, special permission from the common council being required therefor. Every building erected or placed contrary to any ordinance passed under the above provisions shall be deemed a common nuisance, and may be abated as such. An application for special permission to erect, place or rebuild any building within the outer limits contrary to such ordinances shall, before being acted upon, be properly referred by the board of aldermen, and a resolution granting such permission can only be passed at a regular meeting, held subsequent to such reference, and by the unanimous vote of the members of the common council present. To prevent all unsafe construction or condition of chimneys, flues, stoves, pipes, and other things used for fire or conducting smoke; to compel the cleaning of them, and to regulate their construction and condition; to prevent the deposit of ashes in unsafe places and receptacles; to regulate the use of lights in buildings in which combustible articles may be deposited; to regulate the carrying on of manufactories liable to cause fires, and to regulate and prevent the use of fireworks and firearms in the city; to prevent bonfires in the streets and public grounds; to compel the owners and occupants of buildings to have scuttles in the roofs, and stairs and ladders leading to the same, and to require fire escapes to be placed upon buildings when, and as directed by the department of fire; to punish the willful making of a false alarm of fire, or willfully calling a police patrol wagon without cause; and to prohibit the formation of fire, hose, or hook and ladder companies."

Section 292 of the city charter further provides:

"Before the construction or remodeling of any building in the city is commenced, the owner shall file with the deputy building commissioners a sworn statement of the character and use of the building he proposes to erect, *and its location on his premises.* And in all cases, except where the building is a one or two-story frame store, or dwelling within the limits where wooden buildings may be erected, he shall file a copy of the plans and specifications of such building, and a statement which shall contain the name and residence of the owner, and the purposes for which the building is designed, and which shall be sworn to by the owner or his authorized agent. The commissioner of public works shall, within ten days after the filing of the plans, specifications, and statement, approve the same, or indicate in writing the alterations to be made therein to comply with the general laws of the state and ordinances of the city, and no building shall be erected or remodeled until the approval of the commissioner of public works shall be obtained, and a written permit issued by him to the owner or builder of such building. Nothing herein contained shall affect the exclusive power of the common council to grant permits for buildings under subdivision five of section seventeen of this act."

The city has passed and adopted the following ordinances:

### "Chapter XII.

"Sec. 3. Any person, firm or corporation intending to erect, place or rebuild any building or part thereof within the city limits, shall file with the deputy building commissioner, with the statement required by section 292 of the charter of the city, a verified statement of the estimated cost of such building. Any person violating the provisions of this section shall forfeit and pay a penalty of $100.

"Any person, firm or corporation intending to erect, place or rebuild any building or part thereof, except frame dwellings costing less than $3,500,

within the city of Buffalo, shall file a full and complete set of plans and specifications for the same with the deputy building commissioner.

"Said person, firm or corporation shall also file a bond to the amount of ten (10) per cent. of the estimated cost of the building, with the comptroller, for the faithful performance of the work and strict adherence to the plans and specifications on file, which said bond shall be subject to the approval of the corporation counsel, as to its terms and conditions, and shall be approved by the mayor as to the sufficiency of the sureties.

"Sec. 4. The following are hereby defined as the outer limits in which buildings constructed in whole or in part of wood may be constructed, placed or rebuilt under the regulations prescribed in this chapter, to wit: All the territory in the city of Buffalo not included within the limits prescribed in section 1 of this chapter.

"Sec. 5. No person, firm or corporation shall, within the city of Buffalo, outside of the limits prescribed in section 1 of this chapter, erect, place or rebuild any building whose exterior walls are not constructed wholly of iron, stone, brick, concrete or other approved incombustible material, until he shall have first procured a license so to do. Any person desiring permission to erect, place or rebuild such building or part of building in any portion of the city outside of the limits prescribed in section 1, shall first present to the bureau of buildings the statement required in section 3 of this chapter, and if the deputy building commissioner shall approve the same, he shall attach his approval thereof, and the applicant shall thereupon file the same with the city clerk. The clerk shall not present any such petition to the common council without such certificate accompanying the same.

"No permission shall be of force after the expiration of six months from the date of the granting of the same, unless within that time the owner of the land upon which permission is so granted to build shall have commenced the erection, placing or rebuilding of such structure.

"Any person, firm or corporation violating the provisions of this section shall forfeit and pay a fine of $100 per day for each and every day such violation shall continue.

"Sec. 6. All permits when authorized by the council shall be issued by the deputy building commissioner and signed by him. He shall keep a complete record of the same. Such permits shall contain the name of the owner of the building, the date of the granting of the permission and the time when the same will expire, together with the dimensions and location thereof on the lot.

"The permit shall also state the side of the street on which the structure is proposed to be placed, built or rebuilt, and the distance in feet of the lot from the nearest intersecting street, measuring from the lot line nearest to said intersecting street.

"Within forty-eight (48) hours after granting or issuing any permit, the deputy building commissioner shall cause a copy of the same to be filed in the office of the board of assessors.

"Sec. 7. Every building or part thereof erected or placed contrary to the provisions of these ordinances shall be deemed to be a common nuisance and the deputy building commissioner may order the same removed; and in case the owner thereof shall neglect or refuse to remove such building or part thereof, within five (5) days after notice so to do, the commissioner of public works may remove such building or part thereof, and the expense therefor shall be assessed upon the premises upon which such building or part thereof was erected or placed."

When we examine the section quoted from the charter of the city, it will be observed that while the act gives the common council power "*to define the limits within which wooden buildings shall be erected,* * * *"* and declares that "*every building erected or placed contrary to any ordinance passed under the above provisions shall be* deemed a common nuisance, and may be abated as such," the charter does not confer upon the council any power or right to designate the location of

any building on the lot on which it is to be erected, nor does it confer power to pass ordinances regulating the location of buildings.

[1] It is perfectly manifest to the court that the Legislature never intended to convey any such authority. It is exceedingly doubtful, if the Legislature had in express terms undertaken to confer upon the city the right to control the location of buildings on private property, that such an exercise of authority would have been constitutional. Ordinarily private owners of real property have the right to use their property for any and all legitimate purposes, and place buildings on them where they please. If the use of such property is to be restricted or limited by law, such governmental control must be confined to such reasonable enactments as are designed to conserve health, safety, morals, peace, and order. Lochner v. New York, 198 U. S. 45, 25 Sup. Ct. 539, 49 L. Ed. 937, 3 Ann. Cas. 1133; Ives v. South Buffalo Ry. Co., 201 N. Y. 305, 94 N. E. 431, 34 L. R. A. (N. S.) 162, Ann. Cas. 1912B, 156. Such an exercise of power has been sometimes attempted, but as often condemned. Judge Dillon, in his admirable work on Municipal Corporations, makes this comment on the subject:

"By virtue of the police power merely, neither the Legislature nor the city council, exercising delegated power to legislate by ordinance, can impose restrictions upon the use of private property which are induced solely by æsthetic considerations, and have no relation to health, safety, convenience, comfort, or welfare of the city and its inhabitants." Section 695.

We are therefore of the opinion that neither the Legislature nor a municipality can arbitrarily assume the right to control the location of buildings to be erected on lots. Reasonable building ordinances may be enacted and enforced, designed to conserve health and safety, and to that end such ordinances may require that sanitary plumbing shall be installed, proper fire escapes provided, suitable ventilation had, and matters of that kind regulated. Such regulations, however, are of quite a different character than one conferring a power to dictate whether a given building shall be placed in the rear or the front of a lot.

[2, 3] Referring again to the sections of the charter quoted, we repeat that we are unable to find in their provisions anything either prohibiting, or conferring on the city the right to prohibit, the owner from placing his buildings on any part of the lot he chooses, provided he, in other respects, complies with the building laws of the state and city. It is true that by section 292 of the charter it is provided that:

"Before the construction or remodeling of any building in the city is commenced, the owner shall file with the deputy building commissioner a sworn statement of the character and use of the building he proposes to erect, and its location on his premises."

This provision does not deprive the owner of the right to determine the location of the building to be erected. It simply requires that on making application for a permit he shall supply information as to the proposed location of the building. What, then, is the case presented in this action for invoking the equitable powers of the court to compel the removal of the structure erected by Mr. Kellner? It is simply that he violated the charter and ordinances in not correctly stating in his application the location of the building, giving it as to be placed on the rear of the lot, instead of on the front.

There is nothing in the case showing the building as erected violated in any way the building ordinances of the state or city, or that, had he, in his application and statement filed, correctly informed the city authorities that it was to be on the front instead of the rear of his lot, his application could have been legally denied. The granting or withholding of a building permit is not a matter of discretion. So long as the applicant complies with the valid building laws of the state or ordinances of a city, he is entitled to his permit as matter of right, and, if refused, may enforce the right by mandamus. Matter of Walker, 84 Misc. Rep. 118, 146 Supp. 519; People ex rel. Wooster v. Maher, 141 N. Y. 337, 36 N. E. 396.

[4] So the case is narrowed down to the question whether the noncompliance with the ordinance requiring a prospective builder to correctly state the location of a proposed structure, in and of itself, is sufficient to justify a court of equity in requiring its removal as an unlawful structure, or whether the court should leave the city to the enforcement and collection of the penalty expressly given by the ordinance for a violation of its provisions, which in this case is a penalty of $100. Equitable relief of the character demanded is not one of strict right. Equity may be invoked in proper cases, where there exists no adequate remedy at law. But can it be said, under the circumstances of this case, that the city is without adequate remedy at law? Does not the penalty imposed meet all the reasonable requirements of the situation? Where the granting of the relief asked will operate to impose greater hardships and injustice than withholding it, and the ordinance itself in express terms provides the penalty, we are of the opinion the city should be remitted to the remedy therein provided.

It is argued that by section 17 of subdivision 5 of the charter it is provided that:

"Every building erected or placed contrary to any ordinance passed under the above provisions shall be deemed a common nuisance, and may be abated as such."

But a nuisance cannot be made one by mere declaration of charter or ordinance. Gunning System v. City of Buffalo, 62 App. Div. 497, 71 N. Y. Supp. 155. A party cannot be deprived of the protection of the courts by the mere say-so of the Legislature, or the declaration of the ordinances of a city. To make a thing a legal nuisance, it must be so in fact. There is no evidence to support such a contention in this case; nor is there any allegation in the complaint to that effect. The complaint, and the plaintiff's entire case, proceeded simply on the alleged violation of the charter and ordinances of the city.

In view of all these facts and circumstances, we are of the opinion that the complaint should be dismissed, and the city remitted to the enforcement of the penalty prescribed.

The complaint is therefore dismissed, but without costs.

So ordered.