[S. F. No. 12800. In Bank.—October 31, 1928.]

E. B. BROUGHER et al., Petitioners, v. THE BOARD OF PULLIC WORKS OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

Joseph J. McShane and David P. Watkins for Petitioners.

John J. O'Toole, City Attorney, and Walter A. Dold, Chief Deputy City Attorney, for Respondents.

Charles A. Christin, Otto K. Grau and Allan C. Van Fleet, *Amici Curiae.*

CURTIS, J.—The petitioners are asking for a writ of *mandamus* against the Board of Public Works of the City and County of San Francisco requiring said board to grant the application of petitioners for a permit to construct upon certain real property belonging to petitioners, described in said application and situated in said city and county, a building to be used as a hotel. The original petition was filed herein on the twenty-third day of December, 1927, and was denied by this court. Thereupon petitioners asked for a rehearing of said matter. On January 26, 1928, the order denying said petition was vacated and set aside, and the matter was taken under advisement for further consideration. On February 2, 1928, this court made an order for the respondents to show cause before this court on April 3, 1928, why an alternative writ of mandate should not issue as prayed for in petitioners' original petition. On March 23, 1928, the respondents filed an answer to said petition. In the meantime the petitioners had filed an

amendment to said petition and the answer of respondents covered said amendment, as well as said original petition. The matter then came on for hearing on April 3, 1928, and by the agreement of the parties was continued to May 8, 1928. On this last-named date the matter was argued, and in addition thereto petitioners moved the court for leave to file an amended petition setting up more fully the grounds upon which they based their claim that Ordinance No. 7519 (New Series), which will be hereafter more particularly referred to, is void by reason of its provisions being unreasonable, oppressive, arbitrary, and confiscatory. This motion was also argued and taken under consideration by the court. At that time it was announced by the court that the questions of law presented by the pleadings would be first considered and decided and that at the time of their determination the court would further indicate its views as to the time and manner of disposing of the questions of fact made by the pleadings in their present form, and those that might arise in case the court granted petitioners' motion to file their amended petition. It was evident then, as it is now, that should the court in passing on these questions of law decide them in favor of the petitioners, then there would be no necessity of petitioners pressing their motion to file an amended petition. On the other hand, should the court's decision be adverse to petitioners upon these questions of law, then the court would pass upon their motion to file an amended petition and make such other and additional order regarding the further consideration of this proceeding as to the court might appear proper.

The facts brought out by the pleadings herein are briefly stated as follows: Petitioners are the owners of certain real property in the City and County of San Francisco located within the second residential district of said municipality, as shown by its general zoning ordinance (Ordinance No. 5464). This ordinance permits the erection of hotels and apartment houses in said residential district. Petitioners made application to the Board of Public Works of said municipality for a permit to erect in said district and upon their said real property a ten-story class A concrete hotel. Their application was in legal form and in all other respects petitioners had complied with the ordinances of said municipality then in force prescribing the steps necessary to be

taken in order to secure a permit to erect a building in said city and county. Their application was presented on the eighteenth day of April, 1927. The Board of Public Works took no final action thereon until after the ninth day of May, 1927, on which day the mayor of said city and county approved Ordinance No. 7519 (New Series) passed by the board of supervisors of said city and county on the second day of May, 1927. This ordinance provided that no building, with certain exceptions not necessary to mention here, exceeding forty feet in height should be erected within a certain territory, described in said ordinance, and in which territory the real property of petitioners is located. By reason of the passage and enactment of this ordinance, the Board of Public Works refused to grant said application of petitioners for a permit to erect a ten-story building upon their real property, and thereafter denied the same. In the adoption of Ordinance No. 7519 (New Series), the board of supervisors followed the procedure provided by the charter of said city and county relative to the passage and enactment of ordinances generally, and failed to comply with the provisions of that certain act of the legislature, entitled "An act to provide for the establishment within municipalities of districts or zones within which the use of property, height of improvements and requisite open spaces for light and ventilation of such buildings, may be regulated by ordinance," adopted May 31, 1917 (Stats. 1917, p. 1419; Deering's Gen. Laws 1923, p. 369). This act is frequently referred to by the parties hereto as the "Enabling Act of 1917," and in our own reference to said act we will use the designation thereof adopted by said parties. Section 4 of said act is as follows: "In municipalities having a city planning commission the council shall require such commission to recommend the boundaries of such districts and appropriate regulations and restrictions to be enforced therein. Such commission shall make a tentative report and hold public hearings thereon at such times and places as said council shall require before submitting its final report. Said council shall not hereafter determine the boundaries of any district or impose any regulations until after the final report of the city planning commission is filed with the city clerk. Upon receiving such final report said council shall afford persons particularly interested, and the gen-

eral public, an opportunity to be heard, at a time and place to be specified in a notice of hearing to be published in a newspaper to be designated for that purpose. Said newspaper to be a local newspaper, if there be one, otherwise a newspaper of general circulation within the municipality, and to be published not less than three times in any daily paper, or not less than once in any other newspaper of general circulation within the municipality, and, within the week within which said meeting is to be held.''

The charter of the City and County of San Francisco provides for a planning commission, and it is admitted that said municipality had such a planning commission at all the times mentioned in the petition, and that it was at all of said times performing its duties as prescribed by said charter, but that said Ordinance No. 7519 (New Series) was not adopted as a result of any hearing had before said commission, or in pursuance of any report from it. The provision of the charter of said municipality prescribing the notice to be given of proposed ordinances before their final passage is that ''every ordinance . . . shall, after its introduction, be published in the official newspaper . . . for at least five consecutive days (Sundays and legal holidays excepted) before the final action upon the same.'' There is no contention but that this provision of the charter was followed and that all of its requirements were complied with in the adoption of Ordinance No. 7519 (New Series).

We will now proceed to a consideration of the questions of law appearing upon the face of the pleadings already referred to and which may be stated as follows:

First. Having complied with every requirement of the ordinances of said city and county in effect at the time of the presentation of their application for such permit, are petitioners entitled as a matter of right to have granted to them the permit therein prayed for?

Second. Is Ordinance No. 7519 (New Series), enacted by the board of supervisors of said City and County of San Francisco, invalid and void by reason of the failure of said board of supervisors to conform to the procedure provided by the ''Enabling Act of 1917,'' in its enactment and adoption, or, in other words, is the ''Enabling Act of 1917'' applicable to the City and County of San Francisco?

█ As we have already seen, at the time petitioners filed with the Board of Public Works their application to erect a ten-story hotel upon their said real property, the ordinances of said City and County of San Francisco permitted the erection thereon of a building of that character, but before final action had been taken upon petitioners' said application, the board of supervisors had enacted, or had attempted to enact, Ordinance No. 7519 (New Series), which limited all buildings in the locality in said city and county where petitioners' said real property was located, to forty feet in height. A similar situation was shown in *Miller* v. *Board of Public Works of the City of Los Angeles*, 195 Cal. 477 [38 A. L. R. 1479, 234 Pac. 381], except that in that case the Board of Public Works had actually issued a permit to erect the building applied for by the plaintiffs therein, when it learned that the city council of Los Angeles contemplated the passage of a general zoning ordinance which might affect the right of said plaintiffs to erect the style of building described in their application in that part of the city wherein their property was located. The Board of Public Works thereupon canceled and revoked said permit, and after said city council had enacted a general zoning ordinance, said board denied plaintiffs' application for the reason that to issue the same would be in violation of said general zoning ordinance. The point raised by petitioners herein was not raised by the plaintiffs in that action, and the opinion of the court expressly states: "No point is made that the board has not the power to revoke a permit once it has been duly issued nor that the ordinance, if valid, may not operate retroactively to nullify a permit previously issued." In view of this express statement of the court the case of *Miller* v. *Board of Public Works of the City of Los Angeles, supra,* may not be said to be a direct authority adverse to the contention of petitioners, yet it is hardly probable that this court would have denied the plaintiffs any relief in said action had it entertained any serious doubt of the board's power to revoke the permit previously issued by it. No authority has been called to our attention directly bearing upon the question of the power of the Board of Public Works to refuse a permit to petitioners under the circumstances set out in the pleadings. It is held, however, in a number of

well-considered cases, that a Board of Public Works, or a body exercising similar powers to those exercised by the Board of Public Works of the City and County of San Francisco, may cancel or revoke a permit issued by it when the ordinance under which the permit was issued had been amended in such a manner as to render the erection of the building covered by the permit objectionable and contrary to the terms of the ordinance as amended. This precise question was considered and decided in the very recent case of *Brett* v. *Building. Commissioner of Brookline*, 250 Mass. 73 [145 N. E. 269], wherein the court, on page 79 of the opinion, says:

"The petitioners have no special and peculiar immunity arising from the fact that permits had been issued to them. They had begun work pursuant to those permits, although such work had not progressed very far. *Commonwealth* v. *Atlas*, 244 Mass. 78 [138 N. E. 243]. Permits of the nature here in question do not constitute a pure personal privilege. When acted upon by the landowner, they cannot commonly be revoked by the licensing board in the absence of special power to that end or a change in legislation. *General Baking Co.* v. *Street Commissioners of Boston*, 242 Mass. 194, 197 [136 N. E. 245], and cases collected. The revocation of the permits in the case at bar rests exclusively upon the change in the by-laws and not upon a change of mind in the licensing officer. We have already decided that that by-law was a valid exercise of the power conferred upon the town by a constitutional statute. Since the petitioners had only barely begun work pursuant to their permits, they had acquired no vested rights against a change in the by-law by the exercise of the law-making power." (See, also, *Salem* v. *Maynes*, 123 Mass. 372, *City of Des Moines* v. *Manhattan Oil Co.*, 193 Iowa, 1096 [23 A. L. R. 1322, 184 N. W. 823, 188 N. W. 921], and *Southern Leasing Co.* v. *Ludwig*, 168 App. Div. 233 [153 N. Y. Supp. 545, 547].) In this last-named case the building superintendent had issued to a building company a permit to construct an eighty-foot sky sign so as to carry it to a height of 135 feet, but thereafter and before the company had done any work under said permit an ordinance was passed making it unlawful to erect a sky sign of that height. In an action to restrain the building superintendent from permitting the erection

of said sign, it was held that the erection of said sign at the height designated in the permit was unlawful after the enactment of said ordinance, and an injunction was granted enjoining the erection of said sign, the court holding that "As a general rule a permit or license is revocable, except where the licensee had done something under the license from which the mere privilege would ripen into a vested right. This exception, it may be noted, does not apply where the act which operates as a revocation lies within the police power of the state." If a permit already issued may be revoked upon the subsequent amendment of the ordinance under which it was issued, undoubtedly an application for a permit may be denied upon the amendment of the ordinance after the filing of such application, making it illegal to issue such a permit. The exception noted in the foregoing authorities that a permit would not be revoked in those cases where the licensee "had done something under the license from which the mere privilege would ripen into a vested right," does not exist in those cases like the one before us, where no permit has ever been issued. In such cases there is no opportunity for any privilege to ripen into a vested right, for the reason that no privilege, in the sense used in the authorities cited, is acquired until a permit has been issued. The case of the *City of Buffalo* v. *Kellner*, 90 Misc. Rep. 407 [153 N. Y. Supp. 472], cited by petitioners, is not applicable to the facts in the present proceeding. In that case it was held that "So long as the applicant complies with the valid building laws of the state or ordinances of a city, he is entitled to his permit as matter of right, and, if refused, may enforce the right by *mandamus*." But the statement of facts in that case does not show that there had been any change either in the laws of the state or the ordinances of the city, under which the application for a permit had been made, after the filing of the application, which in any way affected or changed the applicant's right to a permit as it existed at the time said application was made. There can be no question, had the board of supervisors not amended the ordinances of the City and County of San Francisco after petitioners had filed their application for a permit, but that upon the refusal of the Board of Public Works to issue such permit to petitioners, it could have been forced to do so by *mandamus*.

But as we have already seen, the board of supervisors before the Board of Public Works had acted upon said application enacted, or attempted to enact, Ordinance No. 7519 (New Series), which, if valid, made it illegal for petitioners to erect a ten-story building upon their said real property. These facts bring the case clearly within the principles enunciated in the authorities above cited and justified the Board of Public Works in denying petitioners' application for a permit, provided Ordinance No. 7519 (New Series) is a valid ordinance of said municipality. It follows, therefore, from what we have said that the petitioners were not entitled to have granted to them the permit applied for by merely showing that they had complied with all the laws and ordinances effective in said municipality at the time of the filing of the application with said Board of Public Works when the further fact appeared that before final action had been taken on their application the ordinances under which said application had been made had been amended by the board of supervisors.

This brings us to a consideration of the second question of law presented by the pleadings herein, and that is, Is Ordinance No. 7519 (New Series) of the City and County of San Francisco invalid by reason of the failure of the board of supervisors in its enactment and adoption to follow the procedure prescribed by the Zoning Act of 1917, or, as we have also stated the question in a different form, Is the ''Enabling Act of 1917'' applicable to the City and County of San Francisco? It is confidently asserted by petitioners that in this state it has been held on many occasions that the zoning power of freeholder chartered cities of this state is derived from the Zoning Act of 1917 (Stats. 1917, p. 1419), and in support of that assertion they cite the following cases: *Miller* v. *Board of Public Works of the City of Los Angeles,* 195 Cal. 477 [38 A. L. R. 1479, 234 Pac. 381]; *Zahn* v. *Board of Public Works of the City of Los Angeles,* 195 Cal. 497 [234 Pac. 388]; *Fourcade* v. *City and County of San Francisco,* 196 Cal. 655 [238 Pac. 934]; *In re White,* 195 Cal. 516 [234 Pac. 396]; *Dwyer* v. *City Council of the City of Berkeley,* 200 Cal. 505 [253 Pac. 932]; *A. C. Blumenthal & Co., Inc.,* v. *Cryer,* 71 Cal. App. 668 [236 Pac. 216]. It is true that there are to be found in these decisions a number of instances where

this court has referred to said act as one of the sources of power from which chartered cities in this state derive their right and authority to enact zoning ordinances. In every instance, we find, in which such reference has been made, it has also been stated that such power is also derived from the constitution of the state. In none of these cases was the direct question presented to this court which is now before us, that is, whether the "Enabling Act of 1917" is applicable to chartered cities which have availed themselves of the power granted to them by the amendment of section 6 of article XI of the constitution of this state, effective November 3, 1914, to amend their charters so as to become empowered "to make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in their several charters, and in respect to other matters they shall be subject to and controlled by general laws." The decision of this question was not necessary to the decision of any question which arose in any of the cases relied upon by petitioners and which have been cited by them in support of their contention that said "Enabling Act of 1917" is applicable to the City and County of San Francisco in the enactment of Ordinance No. 7519 (New Series). We are, therefore, not able to agree with petitioners that this court by reason of any pronouncement appearing in its former decisions is foreclosed from the decision upon its merits of the question presented in the present proceeding and which has just been stated.

In compliance with the provisions of section 8, article XI, of the constitution of this state, the City and County of San Francisco adopted a freeholders' charter, which charter became effective January 8, 1900, and is still in full force and effect in said municipality. On November 3, 1914, section 6 of article XI of the state constitution was amended so as to include the following provision: "Cities and towns hereafter organized under charters framed and adopted by authority of this Constitution are hereby empowered, and cities and towns heretofore organized by authority of this constitution may amend their charters in the manner authorized by this Constitution so as to become likewise empowered hereunder, to make and enforce all laws and regulations in respect to municipal

affairs, subject only to the restrictions and limitations provided in their several charters, and in respect to other matters they shall be subject to and controlled by general laws." In pursuance of the power granted to chartered municipalities by the above provision of the constitution the City and County of San Francisco amended its charter, and by said amendment conferred upon its board of supervisors, in addition to those already exercised by it, the power "To make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in this charter." This amendment became effective January 17, 1925, and is still in full force and effect. By virtue of the constitution and this charter amendment the board of supervisors of said city and county is given plenary power to legislate in all purely municipal matters, subject only to such restrictions as are found in its charter (*Civic Center Assn.* v. *Railroad Com.*, 175 Cal. 441 [166 Pac. 351]; *Heilbron* v. *Sumner*, 186 Cal. 648 [200 Pac. 409]).

It is contended, however, by petitioners that the matter of regulating the height of buildings in a municipality is not a municipal affair, and in support of this contention petitioners rely upon the case of *May* v. *Craig*, 13 Cal. App. 368 [109 Pac. 842], wherein that court held that "The construction of improvements upon private property within a city is not a municipal affair." Assuming that the regulation of private buildings in a municipality is not a municipal affair, it is not shown that the requirements as to the height of buildings, provided by Ordinance No. 7519 (New Series), contravenes any general law of the state upon the subject. It is, however, claimed that the board of supervisors in the enactment of said ordinance failed to follow the procedure provided by the general laws of the state, and particularly that contained in section 4 of the "Enabling Act of 1917," quoted above. This section, as we have seen, provides that in cities having a planning commission, the council shall require said commission to recommend the boundaries of any proposed zoning district, and the regulations and restrictions to be enforced therein; that the commission shall make a tentative report and hold public meetings thereon before submitting its final report to the council; that the council shall not determine the boundaries of any district or approve any

regulation until after the report of said planning commission is filed with the city clerk; upon receiving the final report the council shall afford interested persons and the public an opportunity to be heard at a time and place to be specified in a notice to be published in a newspaper of general circulation. These requirements of section 4 of said act simply prescribe the steps to be taken and the acts to be done by the council before and at the time of the passage of a zoning ordinance, or, in other words, they simply supply the procedure to be followed by the council in the enactment of an ordinance of this character. ▮ It has repeatedly been held by this court that the manner of enacting municipal ordinances is a municipal affair (*Morton* v. *Broderick,* 118 Cal. 474 [50 Pac. 644]; *In re Pfahler,* 150 Cal. 71 [11 Ann. Cas. 911, 11 L. R. A. (N. S.) 1092, 88 Pac. 270]; *O. T. Johnson Corp.* v. *City of Los Angeles,* 198 Cal. 308 [245 Pac. 164]). In the first of these cases the act of 1897 (Stats. 1897, p. 190) requiring ordinances and resolutions passed by the city council, or other legislative body of any municipality, to be presented to the mayor or other executive officer of such municipality for his approval was under consideration by the court, and it was there said: "The act of 1897 unquestionably deals with a municipal affair, the mode and manner of the passage of ordinances and resolutions provided for in the charter. Under this constitutional amendment (section 6, article XI, as amended Nov. 3, 1896), such acts now apply only to cities and to their charters which have organized under the general scheme embraced in the municipal corporation act. (Stats. 1883, p. 93.) San Francisco is not one of such cities, and the act of 1897 has, therefore, no application to it." (*Morton* v. *Broderick,* 118 Cal. 474, 487 [50 Pac. 644, 648].) *In re Pfahler, supra,* this court, at page 82 of the opinion, affirms this doctrine in the following language: "Our Constitution declares that when a freeholders' charter is finally approved by the legislature it 'shall become the organic law of the city' (sec. 8, art. XI), and such a charter has elsewhere been aptly termed the local constitution of the city. As such, provisions as to the distribution of the governmental functions, and the manner of their exercise, obtain, so far as the same are consistent with the Constitution of the state. It has already been held by this court that the manner of enacting muni-

cipal ordinances and resolutions is unquestionably a municipal affair (*Morton* v. *Broderick,* 118 Cal. 474, 487 [50 Pac. 644]), and, therefore, under section 6 of article XI of the Constitution, as amended in 1896, the provisions of a city charter in regard thereto are paramount to general laws of the state.''

■ The pleadings show not only that the charter of the city of San Francisco has prescribed the mode and manner of enacting ordinances in said municipality, but that the board of supervisors in the adoption of said Ordinance No. 7519 (New Series) complied with all these requirements of said charter in reference to the passage and enactment of ordinances. Its legality, therefore, cannot be successfully assailed upon the ground that in its adoption the board of supervisors failed to observe the requirements of the ''Enabling Act of 1917,'' as said act, in so far as it prescribes the steps necessary to be taken by a legislative body of a municipality in the enactment of a zoning ordinance, has no application to the City and County of San Francisco.

■ Petitioners contend, however, that even assuming the ''Enabling Act'' does not apply, yet the board of supervisors of said municipality have no power to enact said Ordinance No. 7519 (New Series) by reason of restrictions contained in subsection 42 of section 1, chapter II of article II of its charter. The provision of the charter reads as follows:

''To provide by ordinance for the establishment of a City Planning Commission, which shall devise plans for the improvement and beautification of San Francisco. Members of said Planning Commission shall receive no compensation and shall not be subject to any prohibition forbidding officials from holding more than one office or position. The Board of Supervisors shall prescribe the duties of said Commission, the number and qualifications of the members thereof, and in general shall enact all legislation not expressly forbidden by this Charter or by general law necessary or incident to carrying into execution the propositions for which said City Planning Commission is instituted.''

Petitioners claim that under this subsection of the charter the board of supervisors is confined to the enactment of ordinances which have for their object and purpose the ''improvement and beautification'' of public streets, parks, buildings, and other public properties, and that it is without

authority or jurisdiction to legislate regarding private property. In other words, petitioners claim that the board of supervisors has no power whatever to enact a zoning ordinance, as such an ordinance affects private property only. We see nothing in this subsection of the charter which would warrant our holding that the board of supervisors is so limited. But even if this provision contains the limitation upon the powers of the board of supervisors as contended for by petitioners, there are other provisions of the charter which by their terms confer upon the board of supervisors of said city and county all the police power invested in said municipality by the constitution of the state, and it is by virtue of the police power possessed by municipalities that they are authorized to enact zoning ordinances (*Miller* v. *Board of Public Works, supra*).

This disposes of the questions of law made by the pleadings and the result of our decision of them is that in the enactment of Ordinance No. 7519 (New Series) the board of supervisors complied with all legal requirements applicable to said board in the enactment of said ordinance and, therefore, that said ordinance furnished a sufficient and legal justification for the denial by the Board of Public Works of petitioners' application for a permit, provided said ordinance is otherwise legal and valid.

Petitioners are also contending that said Ordinance No. 7519 (New Series) is invalid for the reason that its provisions are unreasonable, oppressive and otherwise legally objectionable. The allegations of their petition and the amendment thereto setting forth the grounds upon which the petitioners base this last-mentioned contention are denied by the answer filed by the respondents. From the nature of the issues thus made and from statements of counsel at the hearing of this proceeding, it will be necessary before the validity of said ordinance can be finally determined to have the issues of fact settled either by a referee or some competent court. Petitioners have advanced no sufficient reason why this court should assume jurisdiction of the proceedings to determine and settle in the first instance the facts involved in this controversy. The matter is now before us simply upon an order to show cause why the alternative writ of mandate prayed for by petitioners should not issue. It has never been the policy of this court to encourage the

institution of proceedings herein, particularly where there is a dispute as to the facts involved, when such proceedings could as well have been instituted in the first instance in the superior court of the county where the controversy arose. No good reason appears to us why we should depart from this policy in the present proceeding. The motion of petitioners to file an amended petition, therefore, is hereby denied and the order to show cause dismissed.

These orders are made, however, without prejudice to the right of petitioners to seek in the proper tribunal such relief, not inconsistent with the views herein expressed, as they may be advised they are entitled to.

Shenk, J., Richards, J., Preston, J., Waste, C. J., and Seawell, J., concurred.