[Civ. No. 27875. First Dist., Div. One. Aug. 9, 1971.]

HENRY O'HAGEN, Plaintiff and Appellant, v.
BOARD OF ZONING ADJUSTMENT
OF THE CITY OF SANTA ROSA et al., Defendants and Respondents.

## Counsel

John E. Olmsted for Plaintiff and Appellant.

John D. Flitner, City Attorney, and Michael J. Donovan, Assistant City Attorney, for Defendants and Respondents.

## Opinion

**MOLINARI, P. J.**—This is an appeal by plaintiff from a judgment entered upon a denial of a petition for writ of mandate.

Plaintiff petitioned the Superior Court of Sonoma County for a writ of mandate to compel the City of Santa Rosa (hereinafter "the City"), the Board of Zoning Adjustment of said City (hereinafter "the Board"), and the Santa Rosa City Council (hereinafter "the Council") to annul and rescind the action revoking a use permit previously granted by the City for the operation of a drive-in restaurant. The trial court entered a judgment denying the writ of mandamus.

### Factual Background

On February 8, 1961, one Vernon Rose, the owner of property located at 1207 Fourth Street in Santa Rosa, applied for a use permit for the purpose of constructing a drive-in restaurant at said location. On February 16, 1961, the Board issued a temporary use permit for the purpose requested. The use permit specifically stated that the establishment, maintenance, or operation of the use applied for would not, under the circumstances of the particular case and subject to the terms and conditions set forth therein, be detrimental to the health, safety, peace, morals, comfort, and general welfare of persons residing or working in the neighborhood

of such proposed use, or be detrimental or injurious to property and improvements in the neighborhood or to the general welfare of the City. The use permit was reissued on February 21, 1963, and renewed on a permanent basis on March 17, 1966. On those dates the Board again found and determined that the operation of the drive-in restaurant would not be detrimental to the welfare of the neighborhood.

The conditions established for renewal of the use permit were the same conditions as those established at the time the permit was first issued with the additions of some new conditions specifying parking facilities and regulating points of ingress and egress.

On March 1, 1967, Rose leased the premises to plaintiff for a term of 10 years. Plaintiff used the premises to operate a drive-in restaurant named the "Burger King." Prior to the execution of the lease and shortly thereafter, complaints were received by the City relative to the conduct of the operation at the Burger King and the activities on the premises.

### Procedural Background

Early in 1968, a petition was filed in the office of the City's planning department requesting termination of the use and revocation of the permit, and on February 15, 1968, plaintiff consented to a resolution by the Board limiting the operation of his business to the hours 11 a.m. to 9 p.m. for a period of six months. The resolution also contained other conditions pertaining to the physical condition of the drive-in to which plaintiff also agreed. On August 15, 1968, the Board passed a similar resolution with respect to the hours of operation except that it permitted operation to 10 p.m. during daylight saving time.

Plaintiff refused to comply with the August 15 resolution and filed an appeal with the Council. Pursuant to a hearing held on September 10, 1968, the Council referred the entire matter to the Board to review the question whether or not the use permit should be revoked.[1] A revocation hearing was held on September 26, 1968. At the hearing extensive evidence was received from residents of the neighborhood concerning conditions and activities connected with the operation of plaintiff's drive-in restaurant which were indicative of the existence of a nuisance.

The Board revoked the use permit pursuant to article VI, section 61 of the Santa Rosa Zoning Ordinance which provides, in pertinent part, as follows: ". . . Use permits may be revoked by the BOARD OF ZONING ADJUSTMENT for breach of condition *or other good cause* upon notice and hearing. . . ." (Italics added.) Plaintiff appealed the Board's decision to

---

[1]At this hearing plaintiff again refused to comply with the conditions limiting his hours of operation.

the Council. At said hearing on October 1, 1968, the Council considered the record of the proceedings before the Board. The Council also received further testimony. Upon the termination of the hearing the Council voted to uphold the action of the Board. Petitioner then filed the instant petition pursuant to Code of Civil Procedure section 1094.5 providing for inquiry into the validity of administrative orders and decisions.[2]

In the proceeding before the superior court the matter was submitted, pursuant to stipulation, upon exhibits consisting of the transcript of the oral proceedings at the hearing held by the Board, the transcript of the oral proceedings at the hearing held by the Council, and the minutes of the latter hearing The court thereupon issued its final judgment on November 12, 1969 denying the petition for writ of mandamus. In its "Notice of Intended Decision" which preceded this judgment the trial court stated that "there is ample direct evidence in the record to support a finding that the decisions in question are supported by *the weight of the evidence,* and the Court so finds." (Italics added.)

The record discloses that on October 28, 1968, prior to the filing of the instant petition, an action to abate a public nuisance was filed against plaintiff by the City's city attorney in the Superior Court of Sonoma County in action No. 60697 pursuant to Code of Civil Procedure section 731 which permits such attorney to bring such an action whenever directed by the legislative authority of the city in which such public nuisance exists. Said action was pending when the instant petition was filed. On June 12, 1969, prior to the entry of the judgment herein, a judgment was entered determining that certain conditions in the operation and conduct of plaintiff's business constituted a public nuisance but permitting plaintiff to continue in business provided he performed certain specified conditions and provided he refrained from pursuing or permitting certain specified conduct.

In its "Notice of Intended Decision" the trial court in the instant case took notice and cognizance of the judgment in the nuisance action but stated that it was of the view that such action "does not preclude a judgment in this case."[3]

---

[2]Plaintiff, as lessee of the party to whom the permit was originally issued, was a real party in interest in the revocation proceedings and as such was a proper party to challenge the action taken by the Council and the Board. (*Cohn* v. *County Board of Supervisors,* 135 Cal.App.2d 180, 183-184 [286 P.2d 836].)

[3]We have taken judicial notice of the nuisance action. Under subdivision (a) of section 459 of the Evidence Code the reviewing court takes judicial notice of each matter properly noticed by the trial court. Under subdivision (d) of section 452 of the Evidence Code the trial court could take notice of the records of any court of this state. The record discloses that the nuisance action was called to the attention

*The Use Permit*

■ Legislation requiring that a permit be issued by a municipality as a condition precedent to the erection of a structure on property privately owned, or to the use that may be made of such property, if reasonable, is a valid exercise of the police power. (*City of Yuba City* v. *Cherniavsky,* 117 Cal.App. 568, 572 [4 P.2d 299]; *Consolidated Rock Products Co.* v. *City of Los Angeles,* 57 Cal.2d 515, 527, 533 [20 Cal.Rptr. 638, 370 P.2d 342]; *Euclid* v. *Ambler Co.,* 272 U.S. 365 [71 L.Ed. 303, 47 S.Ct. 114].)
■ To obtain a use permit, the applicant must generally show that the contemplated use is compatible with the policies and terms of the zoning ordinances, and that such use would be essential or desirable to the public convenience or welfare, and will not impair the integrity and character of the zoned district or be detrimental to the public health, safety, morals or welfare. (*Tustin Heights Assn.* v. *Board of Supervisors,* 170 Cal.App.2d 619, 626 [339 P.2d 914]; *Wheeler* v. *Gregg,* 90 Cal.App.2d 348, 360 [203 P.2d 37].)

■ Once a use permit has been properly issued the power of a municipality to revoke it is limited. (*Trans-Oceanic Oil Corp.* v. *Santa Barbara,* 85 Cal.App.2d 776, 783 [194 P.2d 148].) ■ Of course, if the permittee does nothing beyond obtaining the permit it may be revoked. (*Trans-Oceanic Oil Corp.* v. *Santa Barbara, supra.*) ■ Where a permit has been properly obtained and in reliance thereon the permittee has incurred material expense, he acquires a vested property right to the protection of which he is entitled. (*Trans-Oceanic Oil Corp.* v. *Santa Barbara, supra,* at pp. 784-787; *Dobbins* v. *Los Angeles,* 195 U.S. 223, 239 [49 L.Ed. 169, 176, 25 S.Ct. 18]; *Jones* v. *City of Los Angeles,* 211 Cal. 304, 309-312 [295 P. 14]; see *Brougher* v. *Board of Public Works,* 205 Cal. 426, 433-434 [271 P. 487].) ■ When a permittee has acquired such a vested right it may be revoked if the permittee fails to comply with reasonable terms or conditions expressed in the permit granted (*Trans-Oceanic Oil Corp.* v. *Santa Barbara, supra,* at p. 783; *Brougher* v. *Board of Public Works, supra,* at p. 433) or if there is a compelling public necessity. (*Jones* v. *City of Los Angeles, supra,* at p. 314; see *Lawton* v. *Steele,* 152 U.S. 133, 137 [38 L.Ed. 385, 388, 14 S.Ct. 499].)

■ A compelling public necessity warranting the revocation of a use permit for a lawful business may exist where the conduct of that business constitutes a nuisance. (*Jones* v. *City of Los Angeles, supra,* 211 Cal. 304, 315-317.) The principle underlying this rule is that if such a business

of the trial court by both of the parties to the instant action and that it was furnished with sufficient information to enable it to take judicial notice of the matter. (See Evid. Code, § 453; and see *Smith* v. *Hatch,* 271 Cal.App.2d 39, 49 [76 Cal.Rptr. 350].)

constitutes a nuisance it can be removed under the police power of a municipality to prohibit and enjoin nuisances. (*Jones* v. *City of Los Angeles, supra,* at pp. 312, 315.) This right is given as a protection against the improper conduct of any lawful business by acts constituting a nuisance. (*Jones* v. *City of Los Angeles, supra,* at p. 315.) In *Jones* the Supreme Court observed that the power over nuisances is more circumscribed in its objects than the power to zone "but once an undoubted menace to public health, safety, or morals is shown, the method of protection may be drastic." (At p. 316.) The court went on to state, "Private businesses may be wholly prohibited, where their danger is sufficiently great; and other businesses, no matter how well established and how great the resulting loss, may be excluded from certain districts where, by reason of the circumstances, their maintenance has become a public nuisance in those districts. In these cases, the public welfare demands even the destruction of existing property interests." (At p. 316.) (See *Ex parte Quong Wo,* 161 Cal. 220 [118 P. 714], involving a laundry, *Hadacheck* v. *Los Angeles,* 239 U.S. 394 [60 L.Ed. 348, 36 S.Ct. 143], involving a brickyard, and *Reinman* v. *Little Rock,* 237 U.S. 171 [59 L.Ed. 900, 35 S.Ct. 511], involving a livery stable, as examples of decisions applying this principle.)

■ It must be pointed out, however, that in each instance, in order to justify the interference with the constitutional right to carry on a lawful business it must appear that the interests of the public generally require such interference and that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals. (*Lawton* v. *Steele, supra,* 152 U.S. 133, 137 [38 L.Ed. 385, 388].)
■ As observed in *Lawton,* "The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations." (At p. 137 [38 L.Ed. at p. 388]; see *Dobbins* v. *Los Angeles, supra,* 195 U.S. 223, 236 [49 L.Ed. 169, 175].)

The application of the foregoing principles is demonstrated in *Trans-Oceanic Oil Corp.* v. *Santa Barbara, supra,* and *Jones* v. *City of Los Angeles, supra.* In *Trans-Oceanic Oil Corp.* it was held that a zoning ordinance restricting an area to residential uses did not operate retroactively to divest the permittee of vested rights acquired under a permit previously issued for the construction and operation of an oil well on land zoned for that purpose. The reviewing court there observed that no element of nuisance was involved and that, therefore, the case was not to be confused with cases dealing with the power of a municipality to prohibit or regulate the conduct of activities or businesses which are in the nature of nuisances. (85 Cal. App.2d at pp. 788-789.)

In *Jones* four sanitariums for the treatment of nervous diseases were in operation in a district at the time it was annexed by the City of Los Angeles. Some months after the annexation the City Council of Los Angeles adopted a zoning ordinance by which the district was excluded from the area in which the establishment or maintenance of such sanitariums was permitted. The Supreme Court held that the ordinance was valid insofar as it prohibited the further establishment of businesses of this type in the restricted districts but that it was invalid in its application to the four sanitariums in question. The reviewing court took cognizance that a municipality could remove a business constituting a nuisance under the police power, but concluded that since a properly conducted sanitarium for the care and treatment of persons affected with mental or nervous diseases is not a nuisance per se, it could not be determined that the four sanitariums, *as then conducted,* were nuisances under the record before it. (211 Cal. at pp. 315-316.)

## Good Cause

We observe that no contention is made by defendants that it was established that plaintiff violated any of the conditions upon which the use permit was issued or that the Board based its decision upon any breach of any of such conditions. It is asserted by defendants that the Board revoked the use permit for "good cause" and that such cause was established by substantial evidence.

As already pointed out, the Santa Rosa zoning ordinance provided that the Board could revoke use permits for "good cause upon notice and hearing." Plaintiff's predecessor and plaintiff as assignee are presumed to have had knowledge of this provision of law and to have taken the use permit subject to this condition. Plaintiff does not contend to the contrary.

The term "good cause" is a concept which finds expression in the California Constitution (art. I, § 9; art. XX, § 22) and in numerous statutes.[4] The use of said term is not considered constitutionally vague or uncertain since these words call for a factual exposition of a reasonable ground for the sought order. (*Waters* v. *Superior Court,* 58 Cal.2d 885, 893 [27 Cal.Rptr. 153, 377 P.2d 265]; *Carroll* v. *California Horse Racing Bd.,* 16 Cal.2d 164, 167 [105 P.2d 110]; *Bannerman* v. *Boyle,* 160 Cal. 197, 206 [116 P. 732].) The constitutional requirements are met with respect to the right of revocation for good cause when notice is given to the licensee or permittee of the charges made against him and he has been given an opportunity to be heard in his defense. (See *Bannerman* v.

---

[4]See Code of Civil Procedure sections 2019, subdivision (a) (1), (3), 2031, 2032, subdivision (a), 2033, 2036, subdivision (a); Labor Code section 5803; Unemployment Insurance Code section 1030; Penal Code sections 861, 1018, 1382.

*Boyle, supra,* pp. 205-208; *Welch* v. *Ware,* 161 Cal. 641, 646-647 [119 P. 1080].)

■ In the present case we perceive that since plaintiff acquired a vested right in the use permit we must equate the term "good cause" with "compelling public necessity." Such "compelling public necessity," in turn, must be viewed in the context of a public nuisance, i.e., whether the operation of plaintiff's drive-in restaurant constituted a public nuisance in fact. If it did constitute a nuisance in fact, our inquiry is then directed to whether there was a compelling necessity warranting the revocation of the use permit.

We perceive, moreover, that the proceedings by the Board to revoke plaintiff's use permit on the ground that the manner in which his business was being operated constituted a public nuisance was such as to constitute a remedy against such nuisance by way of abatement. (Civ. Code, § 3491.) ■ A city has power through its administrative agency to abate nuisances and within constitutional limits to force property owners to abate conditions which in fact constitute nuisances. (*Dunitz* v. *City of Los Angeles,* 170 Cal.App.2d 399, 404 [338 P.2d 1001]; *Perepletchikoff* v. *City of Los Angeles,* 174 Cal.App.2d 697, 699 [345 P.2d 261]; *Takata* v. *City of Los Angeles,* 184 Cal.App.2d 154, 165 [7 Cal.Rptr. 516]; see Civ. Code, § 3494.) ■ Any claim that the administrative agency has exercised the police power of the city beyond its constitutional limits may, as here, be reviewed under Code of Civil Procedure section 1094.5 since that statute provides an adequate remedy. (*Dunitz* v. *City of Los Angeles, supra.*)

### Res Judicata

We next proceed to discuss what effect, if any, the prior judgment in the nuisance abatement action had upon the instant action. We first observe that although the determinations made by the Board and the Council antedated the filing of the abatement action the judgment in the latter action became a final judgment prior to the rendition of the judgment herein giving its imprimatur to the actions of the Board and the Council. ■ Accordingly, under the defense of res judicata the parties to the instant action would be precluded from litigating a cause of action litigated by them or their privies in the abatement action if that cause of action was finally determined in the latter action, or from litigating any issue necessarily decided in the abatement action. (*Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.,* 58 Cal.2d 601, 604 [25 Cal.Rptr. 559, 375 P.2d 439]; *Solari* v. *Atlas-Universal Service, Inc.,* 215 Cal.App.2d 587, 592 [30 Cal. Rptr. 407].) ■ ■ In the aspect dealing with the determination of the cause of action the defense of res judicata is a complete bar to an action;

in the aspect dealing with the determination of an issue, the defense, generally known as collateral estoppel, is not a complete bar, but is concerned with the conclusiveness of a prior determination of a particular issue. .(*Solari* v. *Atlas-Universal Service, Inc., supra*; *Servente* v. *Murray*, 10 Cal. App.2d 355, 359 [52 P.2d 270].)

 The application of the principle of res judicata in a given case depends upon the affirmative answer to the questions whether the issue decided in the prior adjudication was identical to the one presented in the subsequent litigation, whether there has been a final judgment on the merits and whether the party against whom the principle is invoked was a party or in privity with a party to the prior adjudication. (*Bernhard* v. *Bank of America*, 19 Cal.2d 807, 810 [122 P.2d 892]; *Solari* v. *Atlas-Universal Service, Inc., supra*, 215 Cal.App.2d 587, 593; *Estate of Muller*, 2 Cal. App.3d 259, 274 [82 Cal.Rptr. 531].)

In the instant case we observe that defendants affirmatively pleaded the prior judgment in the nuisance abatement action. Accordingly, since it was pleaded as new matter, such defense, if established, served as a complete bar to the present action if the cause of action determined in the abatement action is the same as that pleaded in the instant action. If the instant action is based on a different cause of action, then such affirmative defense served to present the question whether an issue decided in the abatement action is conclusive evidence of a fact in issue in the present case. (See *Solari* v. *Atlas-Universal Service, Inc., supra*, 215 Cal.App.2d 587, 592-593, and cases there cited.)

Adverting to the validity of the defense of res judicata, we perceive that there can be no dispute that there was a judgment on the merits in the abatement action prior to the rendition of the judgment in the instant action, nor is there any question that the parties to the present case are in privity with a party to the prior adjudication. The abatement action, although brought against plaintiff herein by the People of the State of California, as plaintiff, was actually brought pursuant to Code of Civil Procedure section 731 by the city attorney of the City for and on behalf of the City and pursuant to the Council's direction. We turn, then, to the remaining question whether the cause of action or any issue determined in the prior adjudication is identical to the one presented in the instant action.

 A perusal of the pleadings in the respective actions discloses that both are predicated upon the same cause of action. As we stated in *Colvig* v. *RKO General, Inc.*, 232 Cal.App.2d 56, 65-66 [42 Cal.Rptr. 473], "The essence of a cause of action is the existence of a primary right and one violation of that right, i.e., it arises out of an antecedent primary right and corresponding duty, and a breach of such primary right and duty

by the person upon whom the duty rests. [Citations.] The primary right and duty and the delict or wrong constitute the cause of action in the legal sense. [Citations.] 'The cause of action is simply the obligation sought to be enforced.' [Citations.]" The gist of the cause of action in both the nuisance abatement action and the instant administrative proceeding is to abate a public nuisance allegedly conducted and maintained by plaintiff. The obligation sought to be enforced is the obligation that no man may use his property so as to create a public nuisance, and the primary right sought to be protected is the right of other persons in the community or neighborhood to enjoy their property.[5]

A cause of action must be distinguished from the remedy which is simply the means by which the obligation or corresponding duty is effectuated and also from the relief sought. (*Frost* v. *Witter,* 132 Cal. 421, 426 [64 P. 705]; *Merlino* v. *West Coast Macaroni Mfg. Co.,* 90 Cal.App. 2d 106, 115 [202 P.2d 748].)

An analysis of the nuisance abatement action and the instant administrative proceeding discloses that each is predicated upon the claim that the manner in which plaintiff conducts his drive-in restaurant business constitutes a public nuisance. The allegations made in each are essentially the same,[6] and each seeks to abate the alleged nuisance. The nuisance abatement action, although entitled "Complaint for Injunction for Nuisance," not only sought an injunction enjoining the alleged public nuisance but also a permanent injunction prohibiting plaintiff from operating his business. As a basis for the latter relief the complaint, among other things, alleged that the Board had revoked plaintiff's use permit for the operation of his drive-in restaurant "for the reason that the operation constituted a public nuisance and endangered health, safety and welfare." The instant administrative proceeding seeks to accomplish the same result, i.e., to do away with and put an end to the public nuisance by revoking plaintiff's use permit.[7]

---

[5]Civil Code section 3479, in pertinent part, defines a nuisance as "Anything which is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, . . ." A public nuisance is defined in Civil Code section 3480 as ". . . one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal."

[6]The conditions or activities alleged to be a nuisance were the following: loud and disturbing noise, traffic congestion, the creation of trash, rubbish and litter, the use by patrons of the neighboring property for toilet facilities, and conduct on the part of patrons which resulted in an excessively high percentage of police enforcement and activity.

[7]It is recognized that a business which, when established was entirely unobjectionable, may, under changed circumstances, become a nuisance. (See *Ex parte Hadacheck,* 165 Cal. 416, 421 [132 P. 584]; *Smith* v. *Collison,* 119 Cal.App. 180, 18⁄

The superior court, in the nuisance abatement action, adjudged the conduct and operation of plaintiff's business to constitute a public nuisance. No appeal was taken from this judgment and the same was final at the time the court in the instant action made its adjudication. The prior adjudication of public nuisance was binding upon the court in this action since such determination had been made by a court of competent jurisdiction. The determination of public nuisance, however, is not of paramount significance to our review since the determination by each of the courts on this issue coincided. We observe here that were we called upon to review the finding of the court below on this issue we would be required to hold that there is substantial evidence supporting such determination whether the trial court was exercising its independent judgment on the evidence or was called upon to determine whether the findings were supported by substantial evidence in the light of the whole record, since the record to be reviewed by us, i.e., the agency record, is the same in each instance.[8]

We turn now to the relief granted. The trial court, in the abatement action, did not decree that the business producing the nuisance be eliminated but instead enjoined the operations of such business which produced the nuisance. `This the court was entitled to do since it is well established that in proper cases injunctive relief which accomplishes the purposes of abatement, without its harsh features, is permissible. (*People* v. *Selby Smelting & Lead Co.,* 163 Cal. 84, 90-91 [124 P. 962]; *McClatchy* v. *Laguna Lands Limited,* 32 Cal.App. 718, 723-724 [164 P. 41]; *Willson* v. *Edwards, supra,* 82 Cal.App. 564, 569-572.) In *Willson* it was held that the conditions or activities connected with the operation of a drive-in restaurant which constituted a public nuisance were noise, odors, and the

---

[6 P.2d 277].) Accordingly, a business which is not per se a nuisance may become one by the manner in which it is conducted. (*Wade* v. *Campbell,* 200 Cal.App.2d 54, 58-59 [19 Cal.Rptr. 173, 92 A.L.R.2d 966]; *Willson* v. *Edwards,* 82 Cal.App. 564, 567-569 [256 P. 239]; *Dauberman* v. *Grant,* 198 Cal. 586, 590 [246 P. 319, 48 A.L.R. 1244]; *Cook* v. *Hatcher,* 121 Cal.App. 398, 401-402 [9 P.2d 231].) Thus, it has been held that a drive-in restaurant, although not a nuisance per se because it is a lawful business, may become a nuisance because of the manner of its operation. (*Willson* v. *Edwards, supra; Wade* v. *Fuller,* 12 Utah 2d 299, 301 [365 P.2d 802, 91 A.L.R.2d 569]; *Andrews* v. *Perry,* 127 Misc. 320 [216 N.Y.S. 537, 540-543]; *Weber* v. *Mann* (Tex.Civ.App.) 42 S.W.2d 492.)

[8]No evidence additional to that adduced on the administrative level was proffered or adduced in the court below. Although it is true that the Council, as an appeals body, considered evidence additional to that presented before the Board, such evidence was cumulative and reiterative of that adduced before the Board. Moreover, all of the parties to the proceedings below stipulated that the superior court in making its determination could consider the evidence adduced before both the Board and the Council. Accordingly, this court, if called upon to review the record before the trial court in the light of the substantial evidence rule, would be considering the same record as that before the administrative agencies and the court below. (See *Savelli* v. *Board of Medical Examiners,* 229 Cal.App.2d 124, 133 [40 Cal.Rptr. 171]; *Le Strange* v. *City of Berkeley,* 210 Cal.App.2d 313, 321 [26 Cal.Rptr. 550].)

creation of traffic and attendant circumstances, and that in a nuisance abatement action an injunction, the whole intendment of which was to restrain the defendants from causing, permitting or suffering the creation of unusual and unnecessary noises between specified hours, constituting a portion of the nuisance complained of, was proper. (At pp. 566, 569-572.)

We thus have a situation where the same nuisance complained of in the instant action was previously determined to be of such a nature as not to require the elimination of the business producing the nuisance. In essence the court in the abatement action determined that the conditions and activities constituting the nuisance could be abated by injunctive relief delineating and defining the conditions under which plaintiff's drive-in business could be conducted. In sum, the court determined that although the conduct and operation of the business constituted a nuisance, there was no necessity to grant relief by the drastic remedy of ordering plaintiff to desist entirely from the operation of his said business.

As a result of the prior adjudication in the abatement action the element of a compelling public necessity to prohibit the operation of plaintiff's business was no longer a factor when the instant court was called upon to make its determination. The purport of the prior adjudication, by virtue of the conditions it imposed, was to eliminate the conduct and activities which constituted a public nuisance. This determination was based on a finding that, subject to the conditions imposed, the conditions found to constitute a public nuisance could be eliminated or minimized so as to permit the continuance of plaintiff's business.[9] In view of the reluctance of the courts to revoke a use permit unless there is a compelling necessity to do so, the court below should have given cognizance to the prior adjudication determining, in essence, that a compelling necessity did not exist to totally prohibit plaintiff from operating his drive-in business.

The judgment is reversed.

Sims, J., and Elkington, J., concurred.

---

[9]We observe that the judgment in the abatement action retained jurisdiction to review the effectiveness of the court's order.